# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
### April 22, 2016 Session

## STATE OF TENNESSEE v. SUSAN GAIL STEPHENS

**Appeal by Permission from the Court of Criminal Appeals**
**Circuit Court for Coffee County**
**No. 35064F      Vanessa Jackson, Judge**

_____

**No. M2014-01270-SC-R11-CD – Filed August 23, 2016**

_____

This appeal is one of two similar appeals that were consolidated for oral argument because they involve related questions of law involving Tennessee Code Annotated section 40-15-105 (2006) ("the pretrial diversion statute"), which allows a district attorney general to suspend prosecution of a qualified defendant for a period of up to two years.  See State v. Hamilton, No. E2014-01585-SC-R11-CD (Tenn. 2016).  We granted this appeal to emphasize once again the process the district attorney general, trial court, and appellate courts must follow when reviewing a prosecutor's denial of pretrial diversion.  The defendant was indicted for two counts of statutory rape and two counts of contributing to the delinquency of a minor.  The defendant applied for pretrial diversion three times, and the district attorney general's office denied her application each time.  The trial court likewise denied each of the defendant's three petitions for writ of certiorari.  The defendant was granted permission to file an interlocutory appeal after each denial, and the Court of Criminal Appeals reversed the trial court's decision in the first two appeals.   After the district attorney general's office denied the defendant's application for a third time and the trial court denied the defendant's petition, the Court of Criminal Appeals held that the record does not contain substantial evidence to support the denial of pretrial diversion and remanded with instructions that the district attorney general's office grant the defendant pretrial diversion.  We granted review.  We reverse the Court of Criminal Appeals' judgment, finding that the district attorney general acted properly and the trial court properly found no abuse of discretion, and we reinstate the trial court's judgment affirming the denial of pretrial diversion.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Criminal Appeals Reversed; Case Remanded**

CORNELIA A. CLARK, J., delivered the opinion of the Court, in which SHARON G. LEE, C.J., and JEFFREY S. BIVINS, HOLLY KIRBY, and ROGER A. PAGE, JJ., joined.

Herbert H. Slatery III, Attorney General and Reporter; Andrée S. Blumstein, Solicitor General; Lacy Elaine Wilber, Senior Counsel; Nicholas W. Spangler, Assistant Attorney General; Craig Northcott, District Attorney General; and Jason M. Ponder, Assistant District Attorney General, for the appellant, State of Tennessee.

J. Alexander Little IV and Edward M. Yarbrough, Nashville, Tennessee, for the appellee, Susan Gail Stephens.

**OPINION**

**I. Factual and Procedural History**

On June 15, 2006, a Coffee County grand jury indicted Susan Gail Stephens ("the defendant") for two counts of statutory rape, a Class E felony,[1] and two counts of contributing to the delinquency of a minor, a Class A misdemeanor.[2] The alleged victim of the statutory rape charge was C.B.,[3] a seventeen-year-old male high school student. The defendant was forty-four years old at the time of the offenses. The defendant applied for pretrial diversion on or about October 18, 2006, and the district attorney general's office denied her application.

---

[1] As pertinent to this appeal, statutory rape is defined as "the unlawful sexual penetration . . . of the defendant by the victim when . . . [t]he victim is at least fifteen (15) but less than eighteen (18) years of age and the defendant is more than five (5) years older than the victim." Tenn. Code Ann. § 39-13-506(b) (2005).

[2] As pertinent to this appeal, an adult "contributes to or encourages the delinquency or unruly behavior of a child . . . by aiding or abetting or encouraging the child in the commission of an act of delinquency or unruly conduct or by participating as a principal with the child in an act of delinquency, unruly conduct." Tenn. Code Ann. § 37-1-156(a) (2005).

[3] While the victim is now of majority, the victim was a minor when these charges arose. "It is the policy of this Court to identify minors in a way that protects their privacy." State v. Frausto, 463 S.W.3d 469, 474 n.3 (Tenn. 2015).

The record contains two recitations of the facts: the defendant's recounting of the alleged statutory rape, and that contained in the memorandum from the district attorney general's office denying pretrial diversion. In her pretrial diversion application, the defendant recounted the facts as follows:

> On February 24, 2006, I was with [C.B.] and other teenagers in my car in the [codefendant's] driveway and they had alcoholic beverages. They appeared to be intoxicated. The next night, Saturday, February 25, 2006, I was at the home of [the codefendant] when the teenagers were again present and were drinking. I drank some beer and probably this is what caused me to lose my normal inhibitions and led to what happened later.

> My memory of the exact events is hazy. However, I know that I became physically involved with [C.B.] and we had intercourse. I am very sorry for what I did. This event has had a devastating effect on me and my family. I immediately went to seek treatment with a counselor. I did this even before I got a call from the investigator. The therapist is helping me understand why this happened and is helping me to prevent anything like this from happening in the future.

The district attorney general's office compiled a more detailed account in its memorandum denying pretrial diversion. According to the district attorney general's office, in late 2005 and early 2006, the Tullahoma Police Department began receiving complaints regarding the defendant and codefendant hosting parties for high school students, at which the male students were allegedly permitted to consume alcohol and smoke cigarettes with the defendant and codefendant. A subsequent investigation revealed that, although the defendant and codefendant denied giving alcohol to the boys, "witnesses report[ed] that it was freely available and further, both defendants admit[ted] they knew the boys were drinking." The police department received additional complaints claiming the defendant and codefendant would "drive around town in the [d]efendant's vehicle with their daughters and act inappropriately with the high school boys."

The investigation further found that on or about February 18, 2006, the defendant began "her pursuit" of C.B., by "kissing and fondling him" at a party. The defendant and C.B. consequently spoke on the phone and exchanged text messages. On February 24, 2006, C.B. and the defendant attended another party at the codefendant's home, where C.B. drank and "the [d]efendant made sexual advances toward him."

On February 25, 2006, the defendant and codefendant hosted another party at the codefendant's home, and C.B. attended with several other high school boys. Witnesses reported that C.B. was intoxicated and that the defendant had to prevent C.B. from fighting another boy. C.B. described his sexual encounter with the defendant:

Everyone went inside. Me and [the defendant] were in the garage. She was smoking a cigarette and I was drinking a beer. I turned on a . . . song and we were dancing. [The defendant] then pulled me over to the couch and said[,] "[C]ome here." She was sitting on my lap. [The defendant] then started kissing me and I kissed her back. She fell back on the couch and pulled me on top of her. I unbuttoned her pants, she unbuttoned my pants. She pulled down my pants to my knees and then she pulled her pants off. She said, "Do you really want to do this?" I said, "It's up to you." I said[,] "Do I need to go get a condom?" She said[,] "Yes." I ran out to my truck and got a condom. When I returned she jerked me back on the couch and asked[,] "Do I need to put it on for you?" I said[,] "No, I got it." Then we started making out and then I penetrated her.

The defendant and C.B. were interrupted by the codefendant, who laughed and went back inside the house. That night, C.B., still intoxicated, was permitted to sleep on a recliner in the codefendant's bonus room with several other high school boys. The defendant "went to the recliner where C.B. was sleeping, unbuttoned his pants, and had sex with him," mistakenly believing the other high school boys in the room were sleeping. In his description of the events, the prosecutor noted that the other high school boys were not asleep and that the defendant's fourteen-year-old daughter was also spending the night at the codefendant's house with her seventeen-year-old boyfriend.

The defendant applied for pretrial diversion in October 2006, and the district attorney general's office denied her application. She then petitioned the trial court for a writ of certiorari. The trial court did not conduct an evidentiary hearing prior to denying the defendant's petition in a written order on January 30, 2008. The defendant appealed this order, arguing that the district attorney general's office "considered irrelevant factors and failed to consider all relevant factors." State v. Stephens, No. M2008-00998-CCA-R9-CO, 2009 WL 1765774, at *1 (Tenn. Crim. App. June 23, 2009) [hereinafter Stephens I]. The Court of Criminal Appeals held that the district attorney general's office did not consider irrelevant factors but erred by failing to "'focus' on [the defendant's amenability to correction] as required by [State v. Hammersley, 650 S.W.2d 352 (Tenn. 1983)]." Stephens I, 2009 WL 1765774, at *1. The intermediate court remanded to the district attorney general for reconsideration. The State did not file an application for permission to appeal in this Court.

The defendant's second application for pretrial diversion included supplemental materials of "a history of events concerning [the defendant] since the original charges," some "amend[ed] and revise[d] statistical information," and an explanation of "what has happened to her since February 2006." The defendant attached the following supplemental material to demonstrate her amenability to correction:

> (1) her recent criminal history, including the fact that she had not been arrested or issued a citation during the intervening years; (2) her recent employment history, including several jobs as a sales representative that the [d]efendant claimed abruptly ended due to her pending criminal charges; (3) her ongoing parenting efforts and family situation, including the fact that her children had been placed on their school's honor roll; (4) the continuing social consequences she had experienced as a result [of] her arrest, including various instances in which she was either ostracized by members of the community or had voluntarily removed herself from scholastic or community activities.

State v. Stephens, No. M2010-01373-CCA-R9-CD, 2012 WL 340247, at *2 (Tenn. Crim. App. Jan. 31, 2012) [hereinafter Stephens II]. The district attorney general's office denied her second application for pretrial diversion on October 28, 2009, after focusing more in-depth on her amenability to correction and noting that "the State is under no obligation to permit the [d]efendant to file a new application or consider any other factors than those originally filed and considered by the Circuit Court and Court of Criminal Appeals." The defendant filed a petition for writ of certiorari in the trial court, which was denied, and was again granted permission to seek an interlocutory appeal in the Court of Criminal Appeals.

In the subsequent appeal, the defendant argued that the trial court erred by denying her petition for writ of certiorari because the prosecutor improperly "refus[ed] to accept the [d]efendant's proffered 'renewed' application containing updated information, allegedly relevant to her amenability to correction, and . . . fail[ed] to conduct the proper analysis and reach the proper conclusion concerning the [d]efendant's amenability to correction." Stephens II, 2012 WL 340247, at *3. The Court of Criminal Appeals agreed and held that "the prosecutor's decision to exclude this updated information was equivalent to failing to consider all relevant factors, and the prosecutor's failure to consider any of this new information so tainted his decision-making process as to constitute an abuse of discretion." Id. at *5. The intermediate court again remanded to the district attorney general for reconsideration of all relevant factors. Id. at *6. The State again did not file an application for permission to appeal in this Court.

After the case was remanded a second time, the defendant again submitted updated information to support the consideration of her third application for pretrial diversion. The new materials included work information, the academic success of her two daughters, and the following statement:

> I am ashamed of my behavior and will always be. I am greatly saddened by how it has affected all those involved, the victim, my family, and my friends.

Since February 2006 I have been a fully law-abiding citizen, with not even a traffic ticket. I continue to regret the pain I have caused others due to my actions in February 2006.

The district attorney general's office denied her application for pretrial diversion a third time. In the Second Amended Memorandum in Response to Defendant's Application for Pretrial Diversion, the prosecutor acknowledged that he was mistaken in asserting he was not required to consider "a renewed application for pretrial diversion" but noted that the State had nevertheless considered "the contents of the [d]efendant's brief supplemental information" in the second denial.[4] He explained that the material had "little influence on the State's decision" because "the State is aware that every [d]efendant in every case, particularly a sex abuse crime against a minor, is impacted personally and professionally by the allegations and resulting criminal prosecution." The prosecutor then explicitly stated that, in the current memorandum, the State had considered all relevant supplemental information.

In the memorandum denying the defendant's application, the prosecutor addressed each relevant factor. See Hammersley, 650 S.W.2d at 355. First, the prosecutor acknowledged that the defendant did not have a criminal record, although the defendant and her codefendant had "committed several criminal acts that have gone uncharged in allowing minors to engage in illegal activities." The prosecutor next credited the defendant's agreeable social history, recognizing the twenty character references submitted on the defendant's behalf, her positive community participation, and her relationship with her daughters. The prosecutor then considered the defendant's physical and mental conditions, finding that this factor favored neither prosecution nor pretrial diversion.

In the section assessing the defendant's amenability to correction, the prosecutor emphasized that the defendant, while expressing remorse, failed to mention her "ongoing pursuit of the victim" and instead "characterize[d] it as a chance encounter brought on by her own intoxication" and "a drunken lapse of judgment." The prosecutor likewise expressed suspicion at the defendant's counseling, noting that the defendant began

---

[4] Because the State neither sought permission to appeal to this Court from the Court of Criminal Appeals' ruling in Stephens II, 2012 WL 340247, which directed the district attorney general on remand to consider an amended pretrial diversion application containing new evidence, nor challenged that procedure in this appeal, we decline to address the propriety of such a procedure.

counseling sessions the very day her codefendant was questioned and the criminal investigation was launched and stopped attending counseling near the time she filed her first application for pretrial diversion. The prosecutor also noted that the defendant had failed to establish a treatment plan to prevent such acts from happening again or to provide "any type of psychological or psychiatric information concerning her sex offense against the victim." After questioning her choice of character references, the prosecutor summarized that:

> While the State has reservations about the [d]efendant's truthfulness in her recitation of the facts, her remorse of the events, her motives in pursuing counseling, and the relevance of the character references provided, the State does believe that this [d]efendant has been impacted by the criminal charges.

> . . . .

> The States believes that this [d]efendant is moderately amenable to correction. This assessment is not due to any belief that she is genuinely remorseful over the crime, but instead is based upon the social and legal consequences that this [d]efendant has received and will receive as a result of this prosecution. The State believes that pretrial diversion would not be in the best interests of the [d]efendant. This is due to her attitude concerning the offense. From the initiation of the investigation until today she has expressed much more remorse over the consequences to herself and her family than the effects to the victim, his family, the other children present, or to the community.

Next, the prosecutor addressed the need for general and specific deterrence and found this factor also favored prosecution. In addressing this factor, he mentioned the societal and media tendencies to romanticize, and to minimize the seriousness of, sexual relations between adult women and minor male victims, as opposed to sexual relations between adult men and minor female victims; a recent case in Knoxville, in which the jealous husband shot his wife's teenage partner; and the defendant's role as a parent and trusted caretaker in the community. He pointed out that the defendant had pursued the minor male victim and was not deterred in her pursuit by another adult observing the first episode of sexual intercourse or by the presence of other minors, including her own daughter, in the home. Rather, she awoke the minor victim, who was sleeping in a recliner, and engaged him in sexual intercourse a second time. The prosecutor also questioned whether the defendant was remorseful for her conduct or for being caught, as she acted with disregard in attending multiple parties and allegedly had intercourse multiple times throughout the evening. Finally, the prosecutor addressed how granting pretrial diversion would impact the ends of justice and the best interests of the defendant

and community, explaining that granting pretrial diversion "would unquestionably make a mockery of the ends of justice" and place the public and children at a higher risk.

The defendant petitioned the trial court for a writ of certiorari, and upon review, the trial court concluded that the prosecutor had considered all the relevant factors and had not abused his discretion in denying pretrial diversion. In its written order, the trial court summarized the relevant law and stated:

> After carefully reviewing the Second Amended Memorandum in Response to Defendant's Application for Pretrial Diversion, the Court finds that the [d]istrict [a]ttorney [g]eneral considered the factors set forth in the Hammersley case and weighed all of the relevant information provided by the [d]efendant. The Court further finds that the [d]istrict [a]ttorney [g]eneral did not abuse his discretion in denying the [d]efendant's application for pretrial diversion. Therefore, the [d]efendant's Petition for Writ of Certiorari is denied.

The defendant sought and obtained a third interlocutory appeal to the Court of Criminal Appeals and asked the intermediate court to "reverse the trial court's order . . . and remand the case with instructions that diversion be granted" and to "direct the prosecutor to grant pretrial diversion nunc pro tunc to the date of her 2012 application as an equitable remedy." State v. Stephens, No. M2014-01270-CCA-R9-CD, 2015 WL 4092282, at *4 (Tenn. Crim. App. July 7, 2015) [hereinafter Stephens III].

The Court of Criminal Appeals again ruled in favor of the defendant. First, the appellate court stated that a prosecutor may not require a defendant to admit guilt before granting pretrial diversion, id. at *6 (citing State v. Tipton, No. M2006-00260-CCA-R9-CO, 2007 WL 2295610, at *5 (Tenn. Crim. App. Aug. 9, 2007)), and accordingly held that "the prosecutor abused his discretion when he concluded that the [d]efendant's amenability to correction weighed against granting pretrial diversion because she had not demonstrated sufficient remorse for her actions," id. The intermediate court also found the record lacked substantial evidence to support "the conclusion that the ends of justice and best interests of the [d]efendant and the public favor denying pretrial diversion." Id. Finally, after dismissing the prosecutor's findings on the defendant's amenability to correction and the ends of justice, the Court of Criminal Appeals found that the only remaining factor was the need for deterrence and that the prosecutor lacked substantial evidence "to show that the need for deterrence in this case is so exceptional as to outweigh all other factors to be considered when determining whether the [d]efendant should be granted pretrial diversion." Id. Accordingly, the intermediate court remanded with instructions to grant pretrial diversion, although it declined to grant diversion nunc pro tunc to the date of the defendant's 2012 application. Id. at *6-7.

From this third decision, the State of Tennessee filed an application for permission to appeal, which we granted. See Tenn. R. App. P. 11.[5]

## II. Analysis

### A. Pretrial Diversion Process Generally

#### 1. A Prosecutor's Duty upon Pretrial Diversion Application

The pretrial diversion statute permits a district attorney general to suspend prosecution of a qualified defendant for a period of up to two years. See Tenn. Code Ann. § 40-15-105(a)(1)(A) (2006). Only a narrow class of defendants is eligible for pretrial diversion. See id. § 40-15-105(a)(1)(B)(iii). To be eligible for pretrial diversion, a defendant must not have been previously convicted of a disqualifying conviction or previously been granted pretrial diversion for another offense. See id. § 40-15-105(a)(1)(B)(i); see also State v. Bell, 69 S.W.3d 171, 176 (Tenn. 2002). The defendant in this case is eligible for pretrial diversion.[6]

As this Court has noted, pretrial diversion permits a more efficient use of limited resources available to law enforcement authorities because it allows for quick and inexpensive disposition of appropriate cases. Hammersley, 650 S.W.2d at 353. Nevertheless, a statutorily eligible defendant is not presumptively entitled to diversion. State v. Curry, 988 S.W.2d 153, 157 (Tenn. 1999). Rather, pretrial diversion is "extraordinary relief" because it allows defendants to avoid prosecution for the offenses they have committed and retain a clean record without ever having to admit guilt. Stanton v. State, 395 S.W.3d 676, 685, 688 (Tenn. 2013).

The district attorney general has the sole discretion to determine whether to grant pretrial diversion to one who meets the strict statutory requirements. Bell, 69 S.W.3d at 176 (citing Curry, 988 S.W.2d at 157; State v. Pinkham, 955 S.W.2d 956, 959 (Tenn.

---

[5] For the purposes of oral argument only, this Court consolidated the present appeal with the appeal in State v. Hamilton, No. E2014-01585-SC-R11-CD (Tenn. 2016).

[6] Because statutory rape was not an enumerated sexual offense under Tennessee Code Annotated section 40-15-105(a)(1)(B)(ii) at the time of the offense, the defendant was not disqualified from seeking pretrial diversion.

1997)).  "This Court has recognized that the responsibility placed upon prosecutors to pick and choose among the lot of applicants for pretrial diversion based upon a particular candidate's amenability to rehabilitation or recidivism requires the exercise of unusual powers of discrimination."  State v. McKim, 215 S.W.3d 781, 787 (Tenn. 2007) (quoting Hammersley, 650 S.W.2d at 353) (internal quotation marks omitted).  In determining whether to grant pretrial diversion, the district attorney general "has a duty to exercise his or her discretion by focusing on a defendant's amenability for correction and by considering all of the relevant factors, including evidence that is favorable to a defendant."  Bell, 69 S.W.3d at 178; see also Hammersley, 650 S.W.2d at 355.

The pretrial diversion statute does not enumerate specific criteria that a prosecuting attorney must use when making diversion decisions.  Over time, courts have identified the following non-exclusive factors to guide the district attorney general's discretion in determining whether a particular defendant should, or should not, receive pretrial diversion:

> defendant's amenability to correction, any factors that tend to accurately reflect whether a particular defendant will become a repeat offender, the circumstances of the offense, the defendant's criminal record, social history, physical and mental condition, the need for general deterrence, and the likelihood that pretrial diversion will serve the ends of justice and the best interest[s] of both the public and the defendant.

State v. Richardson, 357 S.W.3d 620, 626 (Tenn. 2012) (citing Hammersley, 650 S.W.2d at 354-55).  While these factors are not intended to limit improperly the exercise of discretion, the courts have held that the circumstances of the offense and the need for deterrence "cannot be given controlling weight unless they are of such overwhelming significance that they [necessarily] outweigh all other factors."  McKim, 215 S.W.3d at 787 (quoting State v. Washington, 866 S.W.2d 950, 951 (Tenn. 1993)) (internal quotation marks omitted).

If the prosecutor denies the application, "the denial must be in writing and enumerate all of the relevant factors considered and the weight accorded to each."  Richardson, 357 S.W.3d at 626 (citing Bell, 69 S.W.3d at 177; Curry, 988 S.W.2d at 157).  "This requirement entails more than an abstract statement in the record that the district attorney general has considered [all relevant] factors."  State v. Herron, 767 S.W.2d 151, 156 (Tenn. 1989), overruled on other grounds by State v. Yancey, 69 S.W.3d 553, 559 (Tenn. 2002).  Rather, the denial "must include both an enumeration of the evidence that was considered and a discussion of the factors considered and weight accorded each."  Pinkham, 955 S.W.2d at 960; see also Bell, 69 S.W.3d at 178.  Additionally, "the denial statement must identify factual disputes between the evidence relied upon [by the district attorney general] and the application filed by the defendant."  Bell, 69 S.W.3d at 177.

## 2. *Trial Court's Review of Prosecutor's Decision*

Where the prosecutor denies a defendant's application for pretrial diversion, a defendant may petition the trial court for a writ of certiorari. See Tenn. Code Ann. § 40-15-105(b)(3); Tenn. R. Crim. P. 38(a); see also McKim, 215 S.W.3d at 788. On review, the trial court presumes that the district attorney general's decision is correct and determines whether the district attorney general abused his or her discretion by examining only the evidence considered by the prosecutor. Bell, 69 S.W.3d at 177; see also Curry, 988 S.W.2d at 157 (citing State v. Winsett, 882 S.W.2d 806, 810 (Tenn. Crim. App. 1993)). The trial court may not reweigh the evidence. Yancey, 69 S.W.3d at 558-59. Rather, the trial court's task is to review "the method used by the district attorney general, but not the intrinsic correctness of the decision." Id. (citing Tenn. Code Ann. § 40-15-105(b)(3) (1997 & Supp. 2001); Ben H. Cantrell, Review of Administrative Decisions by Writ of Certiorari in Tennessee, 4 Mem. St. L. Rev. 19, 28 (1973)).

To this end, the trial court may conduct an evidentiary hearing only when necessary "to resolve any factual disputes raised by the district attorney general or the defendant." Bell, 69 S.W.3d at 177 (citing Curry, 988 S.W.2d at 158). To obtain an evidentiary hearing of this sort, "the petitioner should identify any part of the district attorney general's factual basis he or she elects to contest" when petitioning the trial court for review. Pinkham, 955 S.W.2d at 960. Such "contests" will ordinarily "be limited to matters that are materially false or based on evidence obtained in violation of the petitioner's constitutional rights." Id. When a defendant raises such a contest, then "the trial court should conduct an evidentiary hearing and resolve the dispute before determining whether the district attorney general abused his or her discretion in denying pretrial diversion." Id.

The trial court may find that the prosecutor abused his or her discretion in one of two ways: "either (1) by failing to consider and articulate all the relevant factors or by considering and relying upon an irrelevant factor, or (2) by making a decision that is not supported by substantial evidence." Richardson, 357 S.W.3d at 627 (citing McKim, 215 S.W.3d at 788-89); see also Stanton, 395 S.W.3d at 687 n.2 (clarifying that "the mere consideration of an irrelevant factor" does not constitute an abuse of discretion and that "it is the *undue* consideration of an irrelevant factor that is prohibited"). The district attorney general's failure to consider all relevant factors, including any substantial evidence favorable to the defendant, constitutes an abuse of discretion, even if the reasons stated for denying diversion are supported by the record. See Bell, 69 S.W.3d at 178.

Although an *evidentiary* hearing in the trial court is appropriate only if the defendant contests the factual basis of the district attorney general's decision, nothing prevents a trial court from allowing the State and the defendant to present arguments on

the petition. Indeed, such a hearing in open court facilitates subsequent appellate review. In any event, a written order confirming that the trial judge has satisfied her obligation to "examine each relevant factor in the pretrial diversion process to determine whether the district attorney general has considered that factor and whether the district attorney general's finding with respect to that factor is supported by substantial evidence" is crucial for subsequent appellate review. Yancey, 69 S.W.3d at 559. The trial court may satisfy its review obligation by stating that the prosecutor examined and considered each relevant factor and discussed the weight attributed to each factor. See, e.g., State v. McLean, No. M2011-00916-CCA-R10-CD, 2012 WL 474591, at *6 (Tenn. Crim. App. Feb. 15, 2012) (finding that the trial court stated "[t]he [a]ssistant [d]istrict [a]ttorney examined and considered all the relevant factors. Furthermore she discussed in writing all of the relevant factors that she considered and the weight she attributed to each factor"); State v. Ladd, No. M2008-02826-CCA-R9-CD, 2009 WL 2971075, at *3 (Tenn. Crim. App. Sept. 17, 2009) (finding that the trial court stated "[i]n the case at bar, the State discussed the social and criminal history of the [d]efendant, the circumstances of the offense, his amenability to rehabilitation, his mental and physical condition and the reasons for denial including the [d]efendant's past problems with his CEA certification and licensure. The Court finds that the State considered all the relevant factors required of it and [t]he Court cannot find as a matter of law that it abused its discretion"). As with judicial diversion, the trial court may fulfill its obligation without using any particular "magic words" and need not refer specifically to each factor. State v. King, 432 S.W.3d 316, 327 n.8 (Tenn. 2014); see also State v. Stanton, No. M2010-01868-CCA-R9-CD, 2012 WL 76906, at *7 (Tenn. Crim. App. Jan. 10, 2012) (holding that a trial court's finding is sufficient if the trial court "necessarily implies that the district attorney general considered all the relevant factors and that substantial evidence existed"), aff'd, 395 S.W.3d 676 (Tenn. 2013); State v. Baggett, No. M2007-00985-CCA-R9-CO, 2008 WL 2648921, at *5 (Tenn. Crim. App. July 2, 2008) ("[W]e have concluded that the prosecutor did in fact consider all relevant factors upon which proof was submitted. Thus, while the trial court does not specifically reference the prosecutor's consideration of the required factors, it is clear that no abuse of discretion occurred.").

Where the trial court determines that the district attorney general abused his or her discretion in denying pretrial diversion, the trial court must specify the nature of the error because the proper remedy is dependent upon the manner in which the prosecutor erred. If the district attorney general abused his or her discretion by failing to consider all the relevant factors or by giving undue consideration to an irrelevant factor, the reviewing court "must vacate the district attorney general's decision and remand the case to the district attorney general to further consider and weigh all the relevant factors." Richardson, 357 S.W.3d at 627. The court may not order the district attorney general to grant pretrial diversion because, in such a case, the court does not have appropriate findings upon which to review the district attorney general's decision, Bell, 69 S.W.3d at 179, and may not "fill in the gaps" for the prosecutor, as that would permit the court to extend de novo review over the district attorney general's decision and allow the

- 12 -

reviewing court to substitute its view for that of the prosecutor, <u>Richardson</u>, 357 S.W.3d at 627; <u>Bell</u>, 69 S.W.3d at 179.

If, alternatively, the trial court finds that the prosecutor considered all the relevant factors but abused his or her discretion because the denial is not supported by substantial evidence, the trial court "may order the defendant to be placed on pretrial diversion rather than remanding the case to the district attorney general," as the court in these circumstances has access to a complete record for review and is not "filling in the gaps" for the district attorney general. <u>Richardson</u>, 357 S.W.3d at 627.

### 3. Subsequent Appellate Review

Where a trial court upholds the district attorney's decision to deny pretrial diversion, a defendant may seek an interlocutory appeal to the Court of Criminal Appeals or may appeal the denial following the entry of final judgment on the charges in the trial court. Tenn. R. Crim. P. 38(b); <u>see also</u> <u>McKim</u>, 215 S.W.3d at 789-92. Additionally, after the Court of Criminal Appeals renders its decision, either the State or the defendant may file an application for permission to appeal in this Court from the intermediate appellate court's decision. <u>See</u> Tenn. R. App. P. 9(c), 10(a), 11(A). If the appeal challenges the denial of diversion, the task of any reviewing appellate court, like that of the trial court, is to determine whether the district attorney general abused his or her discretion. <u>See, e.g.</u>, <u>Curry</u>, 988 S.W.2d at 158 ("Our review, *like that of the lower courts,* indicates that the prosecutor's primary consideration in the written denial of diversion was the circumstances of the offense, specifically, the amount of money taken and the duration of the criminal activity." (emphasis added)). In such circumstances, the reviewing appellate court is constrained by the same principles that constrain the trial court's review. In other words, the reviewing appellate court may only consider the evidence presented to the district attorney general, may not reweigh the facts, and may not substitute its judgment for that of the district attorney general. <u>Yancey</u>, 69 S.W.3d at 558. However, where the trial court has held an evidentiary hearing on a contested factual issue, a reviewing appellate court "is bound by factual findings made by the trial court unless the evidence preponderates against them." <u>Bell</u>, 69 S.W.3d at 177; <u>see also</u> <u>Richardson</u>, 357 S.W.3d at 627. With these well-established principles in mind, we turn to the facts of this case.

### B. The Prosecutor's Denial of Pretrial Diversion

In the denial of the defendant's third application for pretrial diversion, the prosecutor considered all the relevant <u>Hammersley</u> factors and discussed the weight assigned to each factor. The prosecutor individually addressed the circumstances of the offense, the defendant's lack of a criminal record, agreeable social history, poor amenability to correction, physical and mental conditions, the need for general and specific deterrence, and the ends of justice and best interests of the defendant and

community. When assessing the defendant's agreeable social history, the prosecutor credited the twenty character reference letters submitted on her behalf and her positive participation in the community. The prosecutor also considered new information provided since her initial application, including the personal and professional impact the charges have had upon the defendant and her children's educational careers. The prosecutor weighed these positive factors in his assessment but concluded that, overall, the record still supported prosecution.

## C. The Trial Court's Review

After the third denial, the defendant petitioned the trial court for a writ of certiorari. The trial court did not hold an evidentiary hearing, as the petition failed to identify any factual disputes. The trial court issued a written order on February 27, 2013. In this order finding that the prosecutor did not abuse his discretion, the trial court noted the Hammersley factors, stated it had "carefully review[ed]" the prosecutor's third denial of pretrial diversion, and concluded that the prosecutor had "properly considered the factors set forth in the Hammersley case and weighed all of the relevant information provided by the [d]efendant."

As already explained, when a trial court reviews a petition for a writ of certiorari, it must address whether the district attorney general "weighed and considered all of the relevant factors and whether there is substantial evidence in the record to support the district attorney general's reasons for denying diversion." Yancey, 69 S.W.3d at 559 (citing Bell, 69 S.W.3d at 177; Cantrell, supra, at 30). Here, the trial court summarized the proper case law and determined that the district attorney general properly considered the relevant Hammersley factors. While a more expansive order may have aided appellate review, the lower court adequately fulfilled its responsibilities in reviewing the prosecutor's denial of pretrial diversion. See id.

## D. Decision of the Court of Criminal Appeals

The Court of Criminal Appeals concluded that "the prosecutor considered and weighed all the relevant factors" but determined that the denial was not supported by substantial evidence in the record. Stephens III, 2015 WL 4092282, at *5. We disagree with the latter finding.

First, the appellate court concluded that the prosecutor abused his discretion by finding the defendant's lack of amenability to correction weighed against granting pretrial diversion because the prosecutor may not require the defendant to admit guilt before granting pretrial diversion. Id. at *6. It is true that a prosecutor may not require a defendant to admit guilt as a condition of granting pretrial diversion. Stanton, 395 S.W.3d at 688 (citing State v. Oakes, 269 S.W.3d 574, 578 (Tenn. Crim. App. 2006); State v. Thompson, 189 S.W.3d 260, 268 (Tenn. Crim. App. 2005); State v. Lane, 56

S.W.3d 20, 29 (Tenn. Crim. App. 2000)). "However, there is a critical distinction between confessing guilt to a crime and accepting responsibility for wrongful conduct. . . . A defendant may admit and assume responsibility for wrongdoing without admitting that he or she has committed a crime." Id. at 689. Accordingly, a prosecutor may assess "a defendant's unwillingness to admit wrongdoing and assume responsibility for his or her actions" when determining whether the defendant's amenability to correction, the need for deterrence, and the ends of justice favor prosecution or diversion. Id.; see also Bell, 69 S.W.3d at 177 (finding the prosecutor included the defendant's failure to take responsibility for his actions in the denial of pretrial diversion); State v. Finch, 465 S.W.3d 584, 608 (Tenn. Crim. App. 2013) (finding the State properly considered the defendant's "unwillingness to admit wrongdoing and assume responsibility for her actions").

The prosecutor here did not fault the defendant for failing to admit guilt for the specific charges against her. Instead, he concluded that she failed to assume responsibility for her actions because, in her application, she omitted any mention of texting the victim in the days prior to the sexual encounter and instead attributed her decision to engage in sexual intercourse with the minor victim to her alcohol consumption. The prosecutor properly considered these facts when determining that the defendant's amenability to correction weighed against diversion.

Next, the Court of Criminal Appeals concluded that the record "does not contain substantial evidence to support the conclusion that the ends of justice and bests interests of the [d]efendant and the public favor denying pretrial diversion" because the "prosecutor d[id] not point to, nor can we find, any evidence in the record to support this conclusion." We disagree and conclude that the prosecutor properly identified the "basis and rationale for [his] decision" by stating that the pretrial diversion in this case, in which the defendant allegedly committed statutory rape, would place other children at a higher risk by diminishing the seriousness of such a crime. See Stanton, 395 S.W.3d at 686 (quoting Pinkham, 955 S.W.2d at 960) (stating that the prosecutor is only required to identify the factual basis and rationale for his decision on pretrial diversion). The role of the reviewing court is not to reweigh the evidence or determine whether the reviewing court agrees with the prosecutor's conclusion; instead, the reviewing court must focus on whether the prosecutor provided sufficient evidence and engaged in proper methodology. Yancey, 69 S.W.3d at 558-59. We emphasize that the discretion to grant or deny pretrial diversion rests with the prosecutor. Although the Court of Criminal Appeals may disagree with the finding that granting pretrial diversion would not serve the public, the prosecutor presented a basis and rationale for his decision, and the reviewing court is not permitted to "substitute its own judgment for that of the [prosecutor]." Stanton, 395 S.W.3d at 686 (citing Richardson, 357 S.W.3d at 627).

After dismissing the district attorney general's findings on the defendant's amenability to correction and the ends of justice and best interests of the defendant and public, the intermediate appellate court considered whether the only remaining factor, the

need for deterrence, supported the denial of diversion. The court then concluded that this factor was insufficient to support diversion because the prosecutor had not shown that the need for deterrence in this case was "so exceptional as to outweigh all other factors to be considered when determining whether the [d]efendant should be granted pretrial diversion." Stephens III, 2015 WL 4092282, at *6 (citing McKim, 215 S.W.3d at 787). A prosecutor is only obligated to show that the circumstances of the offense and need for deterrence are "of such overwhelming significance that they [necessarily] outweigh all other factors" if he or she is assigning *controlling* weight to those factors. Washington, 866 S.W.2d at 951 (quoting State v. Markham, 755 S.W.2d 850, 853 (Tenn. Crim. App. 1988)). As we have explained, the prosecutor here properly relied upon multiple factors in denying diversion and did not assign controlling weight to the need for deterrence. Thus, the prosecutor was not required to show that the need for deterrence was of overwhelming significance that necessarily outweighed all other factors.

## III. Conclusion

In summary, we hold that the prosecutor did not abuse his discretion in denying pretrial diversion. The prosecutor considered all the relevant factors, did not unduly consider any irrelevant factors, and substantial evidence supports the prosecutor's findings that the defendant's amenability to correction, the ends of justice, the best interests of the public and defendant, and the need for deterrence militate in favor of prosecution and against pretrial diversion. Accordingly, we reverse the judgment of the Court of Criminal Appeals, reinstate the trial court's judgment denying the defendant's petition, and remand to the trial court for further proceedings consistent with this opinion. The costs of this appeal are taxed to the defendant.

_____
CORNELIA A. CLARK, JUSTICE