IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs February 27, 2018

## STATE OF TENNESSEE v. LISA EDWARDS

**Appeal from the Criminal Court for Knox County**
**No. 105704    Scott Green, Judge**

---

### No. E2017-01709-CCA-R9-CD

---

Following the denial of her application for pretrial diversion, the defendant, Lisa Edwards, petitioned the Knox County Criminal Court for a writ of certiorari. The trial court denied the petition for writ of certiorari but granted the defendant's request for an interlocutory appeal pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure. Because we find no abuse of discretion, we affirm the denial of pretrial diversion in this case.

### Tenn. R. App. P. 9; Judgment of the Criminal Court Affirmed

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Marcos Garza and Keith Lowe, Knoxville, Tennessee, for the appellant, Lisa Edwards.

Herbert H. Slatery III, Attorney General and Reporter; Courtney N. Orr, Assistant Attorney General; Charme P. Allen, District Attorney General; and Ashley McDermott and Nathaniel Ogle, Assistant District Attorneys General, for the appellee, State of Tennessee.

### OPINION

The Knox County Grand Jury charged the defendant with two counts of child abuse relating to abuse she allegedly committed against her twelve-year-old daughter, K.M.,[1] in April 2015. The defendant submitted an application for pretrial diversion to the Knox County District Attorney General on May 26, 2016.

---

[1] As is the policy of this court, we refer to the minor victim by her initials.

On November 4, 2016, the district attorney's office filed its letter denying the defendant's application for pretrial diversion. The district attorney indicated in her recitation of the facts that the defendant had been charged with two counts of child abuse for physical abuse inflicted on the victim on April 4, 2015, and between April 6 and April 10, 2015. The district attorney indicated that she gleaned the facts of the incidents from interviews conducted on April 12 and 13 and the victim's testimony at an April 11, 2016 hearing. On April 4, 2015, the defendant yelled at and struck the victim after the defendant and the victim's father argued about the victim's wanting to go live with her father. The defendant called the police while the victim's father was at her residence, and while the police were speaking to the defendant, the victim telephoned 9-1-1 to report that the defendant had abused her. The victim "told the operator that she did not want to tell the officer what her mother had done in front of her mother because she did not know what [the defendant] would do to her." The defendant refused to allow the victim to speak to the officer alone, and the victim eventually told the officer that the defendant had not done "anything 'serious.'"

Following this incident, the defendant "was physically violent toward" the victim and "screamed at her and waived her hands around." The defendant "tried to hit her and grab her face" and told the victim "that she wished that she were never born." The defendant also grabbed the victim's arms and scratched her. When the victim returned to her father's house the following week, she reported the abuse to him, and he insisted that she report the abuse to the police. The victim agreed, and she provided a report to the police that coincided with injuries she had on her body.

The district attorney also noted that the victim had been subjected to physical abuse by the defendant from the time "she was seven or eight years old and that the abuse got worse as she got older." The victim reported that the defendant had blamed the victim for the breakup of her second marriage and "that when her stepfather left, [the defendant] hit her, screamed at her, and f[o]ught her more."

During an interview at the ChildHelp USA center, the victim related that the defendant "'has anger problems'" and that she "said 'really mean stuff'" to the victim and "hit her." On at least one previous occasion, the defendant had threatened to kill the victim. The victim indicated that the abuse that resulted in the charges in this case came about because the victim had asked that she be allowed to live with her father.

According to the district attorney, the victim's testimony at an April 11, 2016 evidentiary hearing mirrored her accounts of abuse at the hands of the defendant that she had previously provided to the police and to ChildHelp USA. The victim added that she thought her grandmother had confronted the defendant about the abuse after her grandmother witnessed the defendant behaving violently toward the victim at a

-2-

restaurant. The victim also related two incidents when the defendant had tried to strangle her and strike her about the head and face.

During a June 2015 interview with officials from the Department of Children's Services, the victim's stepfather confirmed the defendant's violent treatment of the victim. The victim's step grandfather told the police that the victim feared the defendant and that the victim "had no reason to lie" about the abuse.

The district attorney noted that the defendant had "reported that she grew up in a dysfunctional family" and that she had been subjected to physical and emotional abuse at the hands of her mother. The district attorney observed that the defendant had no previous criminal convictions and that she met the eligibility requirements for pretrial diversion. The district attorney reviewed each of the letters of recommendation submitted on the defendant's behalf. The principal of the victim's school described the defendant as a loving and involved parent and stated that she had not observed any signs of abuse. The victim's youth minister said that the defendant was always punctual when picking the victim up from camp and that the victim was very well mannered. A family friend complimented the defendant's professionalism in her role as a registered nurse and indicated that she had never seen the defendant behave harshly toward the victim. The defendant's psychologist detailed her history of abuse and attacked the credibility of the defendant's mother and the victim's father. The psychologist also described the relationship between the defendant and the victim as friendly and expressed doubt that the defendant had ever actually abused the victim.

Following this recitation, the district attorney general considered each of the factors relevant to pretrial diversion. With regard to the circumstances of the offense, the district attorney indicated that the defendant had abused a position of trust and had "used her authority as a parental figure to accomplish and cover up her actions." She also observed that the defendant had abused the victim both physically and psychologically. Ultimately, the district attorney concluded that the circumstances of the offenses weighed against the grant of pretrial diversion.

The district attorney gave "credit to [the defendant] for the positive personality traits in the letters of recommendation." The district attorney also noted that the defendant "is well educated and by all accounts well-mannered in public" and that the defendant enjoyed "a good reputation in the community." The district attorney indicated that she had reviewed the referral letters as well as the gifts, photos, and letters the victim had written to the defendant expressing her love. The district attorney observed, however, that, when questioned by the State, the victim's youth minister indicated that he did not know the defendant very well and that "he did not have much interaction with" her. The district attorney also noted that "other members of [the defendant's] family

paint a markedly different picture" of her character. She concluded that the statements of the victim and other family members who were more familiar with the situation "paint[ed] a more accurate picture of [the defendant's] personality." The district attorney found that the defendant's social history did not favor the grant of pretrial diversion.

The district attorney found that because the defendant did "not have any noteworthy physical characteristics or disabilities," this factor "neither favors nor disfavors prosecution." Similarly, the district attorney gave "credit to [the defendant] for her lack of criminal history" but determined that "because [the defendant] does have a significant history of criminal behavior," she would give "little weight" to the absence of criminal convictions.

The district attorney found that the defendant did not appear to be amenable to correction. In support of this finding, the district attorney pointed to the defendant's maintaining "that no abuse occurred" and her "refusal to accept responsibility" for her actions. The district attorney indicated that the defendant "either believes that her actions were acceptable or that she does not need to be held accountable for those actions." The district attorney opined that a grant of pretrial diversion "would reinforce those beliefs."

The district attorney concluded that a grant of pretrial diversion "could have a chilling effect on other children who are thinking about reporting similar abuse" and that, conversely, prosecuting the case could have a deterrent effect in similar cases.

Finally, the district attorney concluded that the grant of pretrial diversion in this case "would not serve the ends of justice" because it "would depreciate the seriousness of the offense and reinforce [the defendant's] apparent failure to accept responsibility for her actions."

Following the denial of her application for pretrial diversion, the defendant filed a petition for writ of certiorari in the Knox County Criminal Court. The court heard arguments from the parties on January 12, 2017, and issued a written order denying the petition for writ of certiorari on January 18, 2017. The court stated that after reviewing "the defendant's application for pretrial diversion, the [S]tate's denial, the petition for writ of certiorari, as well as the arguments of counsel," it had concluded that "the entirety of this record supports the conclusion that the District Attorney General did not abuse her discretion when denying pretrial diversion." The trial court then granted the defendant's motion for interlocutory appeal.

In this interlocutory appeal, the defendant contends that the district attorney abused her discretion by denying pretrial diversion in this case. She argues that the denial of pretrial diversion "was not supported by substantial evidence in the record"

-4-

because the district attorney "failed to consider or focus on" the defendant's amenability to correction, specifically the impact of her education level and the abuse she suffered as a child on her amenability to correction. She also argues that the district attorney placed undue weight on the circumstances of the offense and other uncharged conduct. The State contends that the district attorney did not abuse her discretion.

Code section 40-35-105 provides that "[a] qualified defendant may, by a memorandum of understanding with the prosecution, agree that the prosecution will be suspended for a specified period, not to exceed two (2) years from the filing of the memorandum of understanding." T.C.A. § 40-15-105(a)(1)(A) (2010). A qualified defendant, at the time of the offenses in this case, meant "a defendant who" had "not previously been granted pretrial diversion . . . or judicial diversion under § 40-35-313"; who did "not have a prior conviction for a Class A or B misdemeanor or for any class of felony"; and "[t]he charged offense for which the prosecution is being suspended is not a felony or any" one of several enumerated offenses not applicable in this case. *Id.* § 40-15-105(a)(1)(B). The parties agree, and the record establishes, that the defendant is eligible for pretrial diversion.

Statutory eligibility does not equate to a presumption of entitlement to pretrial diversion. *State v. Stephens*, 497 S.W.3d 408, 419 (Tenn. 2016) (citing *State v. Curry*, 988 S.W.2d 153, 157 (Tenn. 1999)). On the contrary, "pretrial diversion is 'extraordinary relief' because it allows defendants to avoid prosecution for the offenses they have committed and retain a clean record without ever having to admit guilt." *Stephens*, 497 S.W.3d at 419 (quoting *Stanton v. State*, 395 S.W.3d 676, 685, 688 (Tenn. 2013)). The decision to grant or deny pretrial diversion lies within the sole discretion of the district attorney general, which discretion must be guided by the following non-exclusive list of criteria:

> "the defendant's amenability to correction, any factors that tend to accurately reflect whether a particular defendant will become a repeat offender, the circumstances of the offense, the defendant's criminal record, social history, physical and mental condition, the need for general deterrence, and the likelihood that pretrial diversion will serve the ends of justice and the best interest[s] of both the public and the defendant."

*Stephens*, 497 S.W.3d at 419 (quoting *State v. Richardson*, 357 S.W.3d 620, 626 (Tenn. 2012) (alteration in *Stephens*). Importantly, "the circumstances of the offense and the need for deterrence 'cannot be given *controlling* weight unless they are of such overwhelming significance that they [necessarily] outweigh all other factors.'" *Stephens*,

497 S.W.3d at 419 (quoting *State v. McKim*, 215 S.W.3d 781, 787 (Tenn. 2007)) (emphasis in *McKim*).

"When a district attorney general denies an application for pretrial diversion, the denial must be in writing and enumerate all of the relevant factors considered and the weight accorded to each," and the written denial must identify "any factual disputes between the evidence relied upon by the district attorney general and the application filed by the defendant." *Richardson*, 357 S.W.3d at 626 (citing *Curry*, 988 S.W.2d at 157). Following the denial, "[t]he defendant shall have a right to petition for a writ of certiorari to the trial court for an abuse of prosecutorial discretion." T.C.A. § 40-15-105(b)(3); *see also* Tenn. R. Crim. P. 38(a) ("A defendant who seeks and is denied pre-trial diversion pursuant to T.C.A. § 40-15-105 may petition for a writ of certiorari to the trial court for an abuse of prosecutorial discretion."). The trial court reviewing the denial of pretrial diversion must presume that the determination of the district attorney general is correct, and the review is limited to the evidence considered by the prosecutor when denying diversion. *See Stanton*, 395 S.W.3d at 686.

The trial court may find that the prosecutor abused his or her discretion in one of two ways: "either (1) by failing to consider and articulate all the relevant factors or by considering and relying upon an irrelevant factor, or (2) by making a decision that is not supported by substantial evidence." *Stephens*, 497 S.W.3d at 420 (quoting *Richardson*, 357 S.W.3d at 627) (internal quotation marks omitted).

When, as is the case here, the trial court affirms the district attorney's denial of pretrial diversion, the "defendant may seek an interlocutory appeal to the Court of Criminal Appeals or may appeal the denial following the entry of final judgment on the charges in the trial court." *Stephens*, 497 S.W.3d at 422 (citing Tenn. R. Crim. P. 38(b); *McKim*, 215 S.W.3d at 789-92). On appeal, "the role of reviewing appellate courts, like that of the reviewing trial court, is to determine whether an abuse of prosecutorial discretion occurred." *State v. Hamilton*, 498 S.W.3d 7, 17 (Tenn. 2016) (citing *Stephens*, 497 S.W.3d at 16). "It is critical to emphasize that the discretion to grant or deny pretrial diversion rests with the prosecutor, not the reviewing court," and, to this end, the reviewing court must not "reassess each factor and determine whether the court agrees with the prosecutor's conclusion" but must instead "look at the evidence cumulatively to determine if the prosecutor provided sufficient evidence and engaged in the proper methodology." *Hamilton*, 498 S.W.3d at 18.

Examining this case in light of the appropriate standard of review, we conclude that the district attorney did not abuse her discretion by denying pretrial diversion. The record indicates that the district attorney considered all the available evidence and reviewed all of the relevant factors before denying pretrial diversion to the

defendant. As our supreme court has emphasized, it is not the duty of this court to reevaluate the evidence considered by the district attorney.

Accordingly, we affirm the judgment of the trial court.

_____
JAMES CURWOOD WITT, JR., JUDGE