# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE
April 22, 2016 Session Heard at Nashville

## STATE OF TENNESSEE v. GARY HAMILTON

**Appeal by Permission from the Court of Criminal Appeals**
**Criminal Court for Knox County**
**No. 102689      Bob R. McGee, Judge**

_____

**No. E2014-01585-SC-R11-CD – Filed August 23, 2016**

_____


This appeal is one of two similar appeals that were consolidated for oral argument because they involve related questions of law concerning Tennessee Code Annotated section 40-15-105 (2013) ("the pretrial diversion statute"), which allows a district attorney general to suspend prosecution of a qualified defendant for a period of up to two years. See State v. Stephens, No. M2014-01270-SC-R11-CD (Tenn. 2016). We granted review in this case to emphasize once again the process the district attorney general, trial court, and appellate courts must follow when reviewing a prosecutor's denial of pretrial diversion. The defendant was indicted for assault after he allegedly attacked a student at the school where he worked as a teacher's assistant, and the prosecutor denied his application for pretrial diversion. After the trial court refused to overturn the prosecutor's decision, the Court of Criminal Appeals granted the defendant's interlocutory appeal and held that the trial court failed to review properly the district attorney general's decision. Conducting its own review, the intermediate court concluded that the record lacked substantial evidence supporting the denial of pretrial diversion and remanded with instructions that the defendant be granted pretrial diversion. We granted review and conclude that the district attorney general considered all relevant factors. Although the trial court improperly reviewed the district attorney general's action, the trial court reached the correct result. Therefore, we vacate the Court of Criminal Appeals' judgment and reinstate the trial court's judgment affirming the denial of pretrial diversion.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Criminal Appeals Vacated; Case Remanded**

CORNELIA A. CLARK, J., delivered the opinion of the Court, in which SHARON G. LEE, C.J., and JEFFREY S. BIVINS, HOLLY KIRBY, and ROGER A. PAGE, JJ., joined.

Herbert H. Slatery, III, Attorney General and Reporter; Andrée S. Blumstein, Solicitor General; Nicholas W. Spangler, Assistant Attorney General; Randall E. Nichols, District Attorney General; Ashley McDermott, Assistant District Attorney General, for the appellant, State of Tennessee.

Stephen Ross Johnson, Knoxville, Tennessee, for the appellee, Gary Hamilton.


**OPINION**

**I. Factual and Procedural Background**

On November 19, 2013, a Knox County Grand Jury indicted Gary Hamilton ("the defendant") for assault causing bodily injury, a Class A misdemeanor.[1] The alleged victim of the assault charge was M.C.,[2] a sixteen-year-old student at Fulton High School in Knoxville, Tennessee. The defendant applied for pretrial diversion on February 28, 2014, and the district attorney general's office denied his application on April 8, 2014. The following facts are gleaned from the defendant's application and the prosecutor's letter of denial, which appended the affidavits of several witnesses to the altercation.

The defendant was employed as a teacher's assistant at Fulton High School and was assigned to supervise the in-school suspension classroom. On September 16, 2013, M.C. was sent to in-school suspension but arrived without the assignment on which he should work while there. When his teacher did not respond to the defendant's email asking about the work, the defendant gave M.C. a hall pass and allowed M.C. to walk unaccompanied back to his classroom to retrieve his schoolwork. During M.C.'s absence, the principal called the defendant and reprimanded the defendant for allowing M.C. to leave the room unattended. M.C. returned twenty minutes later, ten minutes longer than allowed, and without his hall pass or his work. The defendant questioned M.C. about the missing hall pass, and the two "became engaged . . . in a heated

---

[1] As pertinent to this appeal, assault is defined as "intentionally, knowingly or recklessly caus[ing] bodily injury to another." Tenn. Code Ann. § 39-13-101(a)(1) (2013).

[2] While the victim is now of majority, the victim was a minor when these charges arose. "It is the policy of this Court to identify minors in a way that protects their privacy." State v. Frausto, 463 S.W.3d 469, 474 n.3 (Tenn. 2015).

discussion," according to the defendant.  Due to M.C.'s attitude, the defendant instructed M.C. to go to the principal's office and then followed M.C. into the hallway, where the defendant and M.C. had a physical altercation.  Other than the defendant and M.C., no one witnessed how the altercation began.  David King, the band instructor, heard yelling and ran into the hallway, where he observed the defendant "with a student on the ground, one arm on [the student's] head with the kid turned sideways in [a] fetal position."  At that point, Security Officer Dave Sanderson arrived, and Mr. King returned to his classroom to call additional security.  Officer Sanderson saw the defendant restraining M.C. on the ground and separated the two.  In his affidavit, Officer Sanderson explained that as he separated them, "the defendant punch[ed] [M.C.] in the face after [M.C.] had already been restrained."[3]  Sometime after Officer Sanderson arrived, Assistant Principal Brooke Hartman arrived and witnessed the defendant "screaming at [M.C., who was] lying on the floor curled up against [the] wall."  Assistant Principal Hartman instructed the defendant to move toward the bathrooms, and he complied.  Later, the defendant walked out of the building with Assistant Principal Hartman, repeatedly saying that "he was in pain, did not have time for this, and he hit the student."

Based on witnessing the defendant punch M.C., Officer Sanderson charged the defendant with assault.  In his affidavit, Officer Sanderson recorded M.C.'s statement concerning the altercation in the hallway:

> The defendant told [M.C.] to leave the classroom.  The defendant then followed [M.C.] out into the hallway, . . . [and] the defendant then pushed [M.C.,] and [M.C.] then pushed back at the defendant. . . .  [T]he defendant then pushed [M.C.] back into a wall and then took him down to the ground. . . .  [T]he defendant hit [M.C.,] and . . . [M.C.] punched the defendant with his right hand.

The defendant was escorted to the school's main office following the altercation, and he wrote both a statement describing the incident and a letter of resignation.  In his statement, the defendant wrote:

> Today, during [in-school suspension], I sent [M.C.] to get work from his teacher.  When he came back [ten] minutes late and I asked him where my hall pass was[,] he said he left it somewhere, I can't remember.  [M.C.] then started to smart talk me[,] and I asked him to leave and go to [the

---

[3] According to Officer Sanderson, the school nurse determined M.C. "had an abrasion to the right side of the face and a small cut on the inside of his left cheek."

principal's] office. He then walked out the door and started up with "I can get smart and loud too." I then walked out the door to talk to him[,] and we got loud[,] and he took a defensive posture towards me[,] and I pushed him away. When he came back at me, I grabbed him and pushed him against the wall. He then hit me[,] and I hit him with my right hand.

I did tell him to get out of [in-school suspension] with a loud voice [because] he did not move when I told him to.

In his letter of resignation, the defendant wrote:

I [the defendant], [hereby] give notice to terminate my position as [in-school suspension assistant] [t]eacher at Fulton High School. I am not fit to be a teacher here[,] and I know what I have done was wrong. Please do not expel [M.C.]. I was wrong for getting upset and causing an altercation with the young man. It has been a rough year for me physically[,] and I need to resign and find other employment. I am sorry to have put such a bad light on myself and my family. I only hope that you and the young man's parents can forgive me.

Thank you for this great opportunity.

The defendant was arrested shortly after the incident and terminated from his position within several days.

As already noted, after his indictment, the defendant filed an application for pretrial diversion through counsel on February 28, 2014. In it he noted "additional circumstances" providing context for the eventual altercation, including discomfort he was experiencing due to medical issues before he left for a scheduled medical appointment, presence of more than the maximum number of students in in-school suspension that day, M.C.'s initial failure to speak clearly and unapproved use of his cell phone, the phone call the defendant received from the principal advising that she had seen M.C. wandering around and inferring that the defendant should not have allowed M.C. to leave the room, and M.C.'s escalating hostility and loud voice after he returned and was told to go to the principal's office. He then described his altercation with M.C. somewhat differently than in his original statement:

[M.C.] walked a short distance in the hall and suddenly turned 180 degrees and walked back toward [the defendant]. [M.C.] balled up his fist, so [the defendant] pushed him away and up against the wall both as a self-defense measure and to restrain [M.C.], given that [the defendant] feared

- 4 -

[M.C.] was about to get violent. [M.C.] came back toward [the defendant] and hit [the defendant] in the face with his fist. In response, an altercation ensued in which [the defendant] hit [M.C.]. Knox County Schools Security Officer [Dave] Sanderson and Band Director David King arrived after the altercation had progressed and after [the defendant] had [M.C.] on the floor.

The defendant's pretrial diversion application also failed to mention the defendant's punching M.C. after M.C. was restrained. The application did include, however, a description of the defendant's remorseful attitude and behavior since the arrest; his positive social and educational history and present condition, including positive work history; his lack of a criminal history or any prior alcohol and drug usage; his familial support; his religious and moral background; and his amenability to rehabilitation and potential to comply with the law. The defendant's counsel concluded the application with the following:

> [The defendant] is a good candidate for pretrial diversion. He has never been arrested in his life. He is a kind and caring man, is a hard worker, is a devoted husband, father and son, and is a faithful member of his church. [The defendant]'s response to [M.C.]'s behavior that day may or may not have warranted his dismissal from Knox County Schools, but as evidenced by his resignation letter, [the defendant] obviously felt that his response to [M.C.]'s conduct that day was not befitting that of a teacher or teaching assistant, and he has consistently exhibited a humble and remorseful attitude about what happened. And, despite what happened in this case, he has demonstrated a unique ability to relate to and help young people. He continues to serve his community and has much potential to be an asset to the community in the future. We respectfully believe [the defendant] has the ability and incentive to act within the law without the deterrent effect of a public trial.

In a seven-page letter with attachments dated April 8, 2014, the district attorney general's office denied the defendant's application for pretrial diversion after considering and weighing the evidence. First, the prosecutor found the circumstances of the offense did not support a grant of pretrial diversion and drew a contrast between M.C. and the defendant, stating that "[M.C.] is a sixteen-year-old high school student while [the] [d]efendant is a [forty-nine]-year-old adult [t]eacher's [a]ssistant with education, capability, and life experiences that make him capable of de-escalating a situation involving what he terms to be a 'rude student.'" The prosecutor concluded that the defendant was the aggressor based upon the affidavits of Officer Sanderson, Mr. King, and Assistant Principal Hartman, and upon the defendant's initial account, citing the defendant's acknowledgment that "he was in the 'wrong'" and that he "caused the

altercation"; the defendant's initial statement that M.C. took a "defensive posture" before the defendant pushed him, in contrast to the later statement that M.C. balled up his fist and hit the defendant; and the fact that Officer Sanderson, "a witness uninvolved in the altercation, clearly observed [the] [d]efendant punch [M.C.] in the face while [M.C.] was restrained and in a 'fetal position' on the ground."

The prosecutor also found that the defendant's statement after the altercation and resignation letter, both written on the day the altercation occurred, are inconsistent with the summary in his application for pretrial diversion. The prosecutor stated:

> [The] [d]efendant admits that he followed [M.C.] into the hallway, however, in [the application] version, instead of taking a "defensive posture," [the] [d]efendant says that [M.C.] turned 180 degrees and walked toward [the] [d]efendant with a "balled up" fist. Despite his earlier assertion that he "caused the altercation with the young man," [the] [d]efendant claims in [his application] that he pushed [M.C.] away in self-defense and to restrain [M.C.]. [The] [d]efendant claims he feared that [M.C.] was "about to get violent." [The] [d]efendant states that [M.C.] "came back toward [the defendant] and hit [the] [d]efendant in the face with his fists." In response, [the] [d]efendant hit [M.C.]. [The] [d]efendant acknowledges that [Officer] Sanderson and Mr. King arrived after [M.C.] was on the floor, but does not mention his actions following their arrival— he specifically leaves out any reference to punching [M.C.] in the face while [M.C.] was restrained and in a "fetal position" on the ground.

Next, the prosecutor considered the defendant's social history. The prosecutor credited the defendant's work ethic and positive reputation in the community and noted that the referral letters describe the defendant as "hard-working, reliable[,] and helpful." Despite the positive nature of the defendant's social history, the prosecutor found that other factors outweighed the positive effect of these facts. The prosecutor next credited the defendant's clean criminal record, and found that the defendant's lack of noteworthy physical characteristics or disabilities neither favored nor disfavored prosecution.

When considering the defendant's amenability to correction, the prosecutor referenced the inconsistencies between the defendant's initial descriptions and those in the pretrial diversion application. Based on the defendant's minimization of his own actions, the prosecutor found that the defendant's lack of amenability to correction favored prosecution.

The prosecutor concluded that granting pretrial diversion would "send a message" that the justice system does not take crimes of this nature—specifically, crimes occurring

within schools and against young people—seriously, and explained that the deterrent effect factor favored prosecution. Finally, contrasting the defendant's "responsibilities as an employee of the Knox County School System" with his actions as the aggressor in the altercation, the prosecutor determined that granting pretrial diversion would not serve the ends of justice.

The defendant petitioned the trial court for review of the denial via the writ of certiorari, see Tenn. Code Ann. § 40-15-105(b)(3), arguing that the district attorney general abused his discretion in denying pretrial diversion. The trial court allowed oral arguments on the petition but did not receive additional evidence. The trial court upheld the denial, ruling from the bench:

> But this Court will make this finding, it's a narrow finding, the Court—there's no way to deal with this issue without, to some extent, considering the circumstances of the alleged offense. But the Court is only going to consider them—the circumstances in terms of their relationship to the issue of the amenability of the defendant to correction and rehabilitation.
>
> It appears to the Court that there is evidence from the victim and from at least one other witness that supports the idea that [the defendant] reacted in a verbal altercation in a way as to escalate the verbal altercation into a physical altercation, and that he—there's evidence to support the notion that he lost his temper. He got mad and he punched the victim.
>
> And this is not just two guys on the street. [The defendant] was in a position of authority. It was his job to keep the peace, to prevent physical violence from occurring.
>
> Now, this Court is not making any findings as to the facts, I'm only considering the potential evidence that would be presented to a finder of fact. I might very—if this were a bench trial, I might very well find the issue of credibility to be in [the defendant]'s favor, and that would control the outcome of the case.
>
> I'm not making any finding as to who's telling the truth. I'm only considering the evidence that's there and how that relates to the reasonableness of the Attorney General's decision that this is a prosecutable case, and that there is a basis for believing that [the defendant] is capable of losing his temper and acting out in violence, in this case against a minor

that he was supposed to be in a caretaker's position over. He was, not exactly a teacher, but he was supposed to be keeping the peace in this class.

So based on that this Court will make the finding that I cannot find that the Attorney General abused his discretion in denying pretrial diversion. And I think I've—for purposes of the record, I think I made it as clear as I can, I'm only considering the circumstances of the offense as they relate to his amenability.

This appears to have been an impulse act on his part, which suggests a lack of control on his part, which would, in some measure, support a finding that he lacks amenability to correction or rehabilitation. He just loses his temper. Or is capable of that, at any rate. That's my finding. So I'm sure that there will be an interlocutory appeal.

The defendant requested and was granted permission to file an interlocutory appeal in the Court of Criminal Appeals. See Tenn. R. App. P. 9.

The Court of Criminal Appeals reversed the trial court's finding and held that the trial court insufficiently reviewed the denial of pretrial diversion and that the district attorney general's conclusions that the circumstances of the offense, the defendant's lack of amenability to correction, the public interests and the ends of justice, and the need for deterrence favored prosecution were not supported by substantial evidence. See State v. Hamilton, No. E2014-01585-CCA-R9-CD, 2015 WL 4092391, at *5-7 (Tenn. Crim. App. July 6, 2015). First, the appellate court found the record lacked substantial evidence to support the prosecutor's assertion that the defendant was the aggressor. The court questioned whether the prosecutor meant the defendant was the initial aggressor, or that the defendant "was acting aggressively toward M.C." Id. at *5. If the former, the court reasoned that no school officials witnessed who started the altercation, so the prosecutor could not rely on this factor. If the latter, the court reasoned that if the defendant was acting aggressively, that constituted circumstances of the offense, not amenability to correction. The court also concluded the record did not contain substantial evidence to support the prosecutor's conclusion that the defendant's written statement and resignation letter were inconsistent with his application for pretrial diversion because the statements were not "inherently inconsistent. . . . [and] do not illustrate a 'complete change' in the [d]efendant's version of events." Id.

The Court of Criminal Appeals next analyzed the need for deterrence. The court treated this factor as the sole remaining reason the district attorney gave for denying the defendant pretrial diversion and, therefore, held that the prosecutor was required to consider distinct factors and erred by failing to do so. See id. at *6-7 (citing State v.

Hooper, 29 S.W.3d 1, 10-12 (Tenn. 2000)).  Accordingly, the Court of Criminal Appeals concluded that "the record does not contain substantial evidence to support the denial of pretrial diversion on the basis of its deterrent effect on other criminal activity[,] and the district attorney general abused his discretion in doing so."  Id. at *7.  The Court of Criminal Appeals remanded the case with instructions to the trial court to order the district attorney general to grant pretrial diversion.  Id.

Thereafter, the State of Tennessee filed an application for permission to appeal, which we granted.  See Tenn. R. App. P. 11.

## II.  Analysis

### A.  Pretrial Diversion Process

This case presents substantially the same questions of law presented in State v. Stephens, No. M2014-01270-SC-R9-CD, ___ S.W.3d ___ (Tenn. 2016), which opinion is being filed contemporaneously with this opinion.  In Stephens, we articulated the analysis for the pretrial diversion process, see Tenn. Code Ann. § 40-15-105, and determined that the Court of Criminal Appeals improperly reviewed the evidence.  Accordingly, we upheld the prosecutor's denial of diversion.  This appeal is controlled by our analysis of the pretrial diversion process in Stephens.

### B.  The District Attorney's Decision

In this case, the prosecutor denied in writing the defendant's application for pretrial diversion.  See State v. Richardson, 357 S.W.3d 620, 626 (Tenn. 2012).  In doing so, the prosecutor considered the circumstances of the offense; the defendant's criminal record, social history, and present condition including mental and physical conditions; the deterrent effect on other criminal activity; the defendant's amenability to correction; and whether pretrial diversion would serve the ends of the justice and the best interests of both the public and the defendant.  See id. (citing State v. Hammersley, 650 S.W.2d 352, 354-55 (Tenn. 1983)).  The prosecutor reviewed all the relevant, substantial evidence, including evidence favorable to the defendant: the defendant's positive reputation in the community, lack of criminal history, and numerous character reference letters submitted on his behalf.  See State v. Bell, 69 S.W.3d 171, 178 (Tenn. 2002).  After weighing each factor, however, the prosecutor concluded that the factors supporting prosecution outweighed the factors supporting diversion.  See State v. Pinkham, 955 S.W.2d 956, 960 (Tenn. 1997); see also Bell, 69 S.W.3d at 178.  The prosecutor properly considered all relevant factors and did not rely upon irrelevant factors.

## C. The Trial Court's Review

The defendant petitioned the trial court for a writ of certiorari. See Tenn. Code Ann. § 40-15-105(b)(3); Tenn. R. Crim. P. 38(a); see also State v. McKim, 215 S.W.3d 781, 788 (Tenn. 2007). In conducting its review, the trial court was obligated to presume that the district attorney general correctly denied diversion, State v. Curry, 988 S.W.2d 153, 158 (Tenn. 1999), to examine only the evidence considered by the prosecutor, Bell, 69 S.W.3d at 177; see also Curry, 988 S.W.2d at 157 (citing State v. Winsett, 882 S.W.2d 806, 810 (Tenn. Crim. App. 1993)), and to not reweigh that evidence or pass upon the intrinsic correctness of the decision but, rather, to review "the method used by the district attorney general," State v. Yancey, 69 S.W.3d 553, 558-59 (Tenn. 2002) (citing Tenn. Code Ann. § 40-15-105(b)(3) (1997 & Supp. 2001); Ben H. Cantrell, Review of Administrative Decisions by Writ of Certiorari in Tennessee, 4 Mem. St. L. Rev. 19, 28 (1973)). In determining whether an abuse of prosecutorial discretion occurred, the trial court was required to consider whether the prosecutor either (1) failed to consider and articulate all the relevant factors or considered and relied upon an irrelevant factor, or (2) made a decision unsupported by substantial evidence. Richardson, 357 S.W.3d at 627 (citing McKim, 215 S.W.3d at 788-89). The district attorney general's failure to consider all relevant factors, including any substantial evidence favorable to the defendant, constitutes an abuse of discretion, even if the reasons stated for denying diversion are supported by the record. See Bell, 69 S.W.3d at 178.

Although a trial court may conduct an evidentiary hearing when necessary "to resolve any factual disputes raised by the district attorney general or the defendant," Bell, 69 S.W.3d at 177 (citing Curry, 988 S.W.2d at 158), the trial court here did not conduct an evidentiary hearing of this sort. Rather, the trial court held a hearing on the petition in open court at which the parties presented argument and ultimately denied the defendant's petition in a ruling from the bench.[4] In doing so, the trial court stated that it had considered "the evidence that's there and the reasonableness" of the prosecutor's decision. The trial court specifically addressed "the circumstances [of the alleged offense] in terms of [its] relationship to the issue of the amenability of the defendant" and

---

[4] As we stated in Stephens, when ruling on a petition for writ of certiorari in a pretrial diversion case, a trial judge should enter a written order confirming that she has satisfied her obligation to "examine each relevant factor in the pretrial diversion process to determine whether the district attorney general has considered that factor and whether the district attorney general's finding with respect to that factor is supported by substantial evidence" is crucial for subsequent appellate review. Yancey, 69 S.W.3d at 559. Although the order in this case granting the defendant permission to seek an interlocutory appeal references an order entered earlier on the denial, no such order appears in the record. The only written reference is a minute entry for June 16, 2014.

the notion that the defendant, not the victim, escalated the verbal disagreement to physical altercation. The trial court also discussed the defendant's amenability to correction and concluded that the evidence indicated the defendant escalated the situation and lost his temper, leading the defendant to hit the student, which "suggests a lack of control on [the defendant's] part [and] . . . support[s] a finding that [the defendant] lacks amenability to correction or rehabilitation."

### D. Subsequent Appellate Review

On appeal, the Court of Criminal Appeals concluded that the trial court's review was inadequate because the trial court "addressed only the circumstances of the offense in its review . . . . [and] did not state whether the district attorney general considered all of the relevant factors or whether the district attorney general's findings were supported by substantial evidence." Hamilton, 2015 WL 4092391, at *5. We agree with the Court of Criminal Appeals' finding of inadequacy.

We reiterate that a trial court reviewing a petition for a writ of certiorari must address whether the district attorney general "weighed and considered all of the relevant factors and whether there is substantial evidence in the record to support the district attorney general's reasons for denying diversion." Yancey, 69 S.W.3d at 559 (finding that the trial court must "examine each relevant factor in the pretrial diversion process to determine whether the district attorney general has considered the factor and whether the district attorney general's finding with respect to that factor is supported by substantial evidence" (citing State v. Herron, 767 S.W.2d 151, 156 (Tenn. 1989), overruled on other grounds by Yancey, 69 S.W.3d at 559)). As we explained in Stephens, a trial court need not use any particular magic words to satisfy these review obligations. Stephens, __ S.W.3d at ____. However, where, as here, a trial court specifically limits its discussion to certain factors and omits any analysis of the remaining factors, including the defendant's criminal record, social history, and present condition; the deterrent effect on other criminal activity; and whether pretrial diversion would serve the ends of justice and the best interests of both the public and the defendant, the trial court has not satisfied its review obligations. Therefore, the trial court here erred by failing to determine whether the prosecutor had properly considered each of the relevant factors.[5]

---

[5] We reiterate that a more complete written statement of the trial court's reasoning would have been particularly helpful to appellate review.

Nevertheless, we need not remand to the trial court for further proceedings because, as explained in Stephens, when a defendant appeals from the denial of diversion, the role of reviewing appellate courts, like that of the reviewing trial court, is to determine whether an abuse of prosecutorial discretion occurred. Stephens, __ S.W.3d at ____. In fact, after concluding that the trial court's review was inadequate, the Court of Criminal Appeals here conducted such a review.[6] The Court of Criminal Appeals determined that the district attorney general had "considered and weighed all the relevant factors" but found an abuse of discretion after concluding that the prosecutor's denial is not supported by substantial evidence. Hamilton, 2015 WL 4092391, at *5. We agree with the intermediate appellate court that the district attorney general considered and weighed all the relevant factors, but to the contrary, we also conclude that the district attorney general's decision to deny diversion is supported by substantial evidence.

In his denial of the defendant's application for pretrial diversion, the prosecutor provided evidence to support his conclusions that the circumstances of the offense, the defendant's lack of amenability to correction, the need for deterrence, and the public interest and the ends of justice favor prosecution. To determine that the defendant's amenability to correction and the circumstances of the offense did not support granting pretrial diversion, the prosecutor asserted that the defendant was the aggressor, and that the defendant's written statement and resignation letter were inconsistent with his application for pretrial diversion. Id.

It is critical to emphasize that the discretion to grant or deny pretrial diversion rests with the prosecutor, not the reviewing court. Despite acknowledging that the prosecutor conducted a sufficient review, the Court of Criminal Appeals reexamined the evidence from the defendant's pretrial diversion application and reached its own

---

[6] We acknowledge that in Yancey, a pretrial diversion case appealed after the defendant had been convicted by a jury, this Court remanded to the trial court for application of the proper standard of review because the trial court had "recite[d] only two of the factors in the context of 'outweigh[ing] any other' factors. . . . [and] [did] not state whether the district attorney general considered all of the relevant factors or whether the district attorney general's findings were supported by substantial evidence." Yancey, 69 S.W.3d at 559. Yancey is factually distinguishable because, not only had the trial court failed to apply the appropriate standard of review, the Court of Criminal Appeals had also considered evidence admitted at trial when concluding that the prosecutor's denial of diversion was not an abuse of discretion. Under these unusual circumstances, a remand was appropriate. Generally, however, when the only error is a reviewing trial court's failure to apply the appropriate standard of review, this error may be rectified by the reviewing appellate court itself applying the appropriate standard to determine whether the denial of diversion resulted from prosecutorial abuse of discretion. Cf. Hoover v. Bd. of Prof'l Responsibility of Supreme Court, 395 S.W.3d 95, 103 (Tenn. 2012) ("Our standard of review on appeal is identical to that of the trial court . . . .").

conclusions regarding whether the defendant was the aggressor and whether the defendant altered his depiction of the altercation, thereby improperly reweighing the evidence and substituting its judgment for that of the district attorney general. See Yancey, 69 S.W.3d at 558-59; Ben H. Cantrell, Review of Administrative Decisions by Writ of Certiorari in Tennessee, 4 Mem. St. L.Rev. 19, 30 (1973). The role of the reviewing court is not to reassess each factor and determine whether the court agrees with the prosecutor's conclusion; instead, the reviewing court must look at the evidence cumulatively to determine if the prosecutor provided sufficient evidence and engaged in the proper methodology. Yancey, 69 S.W.3d at 558-59.

Moreover, in its analysis, the intermediate court below concluded that, even if the record shows that the defendant engaged in aggressive behavior, "such behavior constitutes a circumstance of the offense" and is not "'of such overwhelming significance that [it necessarily] outweigh[s] all other factors.'" Hamilton, 2015 WL 4092391, at *6 (quoting State v. Washington, 866 S.W.2d 950, 951 (Tenn. 1993)). We reiterate, as we did in Stephens, that a prosecutor is only obligated to show that the circumstances of the offense and need for deterrence are "of such overwhelming significance that they [necessarily] outweigh all other factors" if he or she is assigning *controlling* weight to those factors. Washington, 866 S.W.2d at 951 (quoting State v. Markham, 755 S.W.2d 850, 853 (Tenn. Crim. App. 1988)). Here, as in Stephens, the prosecutor relied upon multiple factors without assigning controlling weight to either the need for deterrence or the circumstances of the offense.[7] Based on our review, we conclude that the prosecutor did not abuse his discretion by denying diversion.

In so holding, we are not unsympathetic to the defendant. Were it our task to review the record and weigh the evidence ourselves, we may well have granted pretrial diversion. However, a reviewing court is restricted to determining whether the prosecutor considered the relevant factors and whether the prosecutor's denial of pretrial diversion is supported by substantial evidence. If the denial is not supported by

---

[7] Furthermore, the Court of Criminal Appeals found the prosecutor erred by not addressing specific factors when the prosecutor concluded that the need for deterrence favored prosecution. See Hamilton, 2015 WL 4092391, at *6-7 (citing State v. Hooper, 29 S.W.3d 1, 10-12 (Tenn. 2000)). In Hooper, we stated that a trial court which relies exclusively upon the need for deterrence to deny probation must show "a need to deter similar crimes . . . in the particular community, jurisdiction, or in the state as a whole, and . . . incarceration of the defendant may rationally serve as a deterrent to others similarly situated and likely to commit similar crimes." Hooper, 29 S.W.3d at 10. As the prosecutor here relied upon factors other than the need for deterrence when denying pretrial diversion, the prosecutor did not err by failing to enumerate the Hooper factors, even assuming, without deciding, that Hooper applies to the current pretrial diversion statute.

- 13 -

substantial evidence, the prosecutor abused his or her discretion. Where, as here, the evidence in the record could support either conclusion, "it cannot be an abuse of discretion to decide the case either way." State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978). Accordingly, we hold that the prosecutor did not abuse his discretion in concluding that the circumstances of the offense, the defendant's lack of amenability to correction, the need for deterrence, and the public interests and the ends of justice favor prosecution. We conclude that the Court of Criminal Appeals erroneously reweighed the evidence and substituted its judgment for that of the district attorney general, rather than determining whether the record lacked substantial evidence to support the prosecutor's findings.

## III. Conclusion

In summary, we hold that, even though the trial court's review was inadequate, the trial court reached the correct result. Furthermore, we hold that the Court of Criminal Appeals erred in concluding that the record lacks substantial evidence to support the prosecutor's denial of the defendant's application for pretrial diversion. We conclude that the record contains substantial evidence supporting the prosecutor's determinations regarding the circumstances of the offense, the defendant's amenability to correction, the public interest and the ends of justice, and the need for deterrence. Accordingly, we vacate the Court of Criminal Appeals' grant of pretrial diversion, reinstate the trial court's judgment denying the defendant's petition for certiorari, and remand to the trial court for further proceedings consistent with this opinion.[8] Costs of this appeal are taxed to the defendant.

_____
CORNELIA A. CLARK, JUSTICE

_____

[8] Our decision herein does not preclude the defendant from seeking judicial diversion pursuant to Tennessee Code Annotated section 40-35-313 (2013).