IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs May 30, 2019

## STATE OF TENNESSEE v. TIMOTHY WAYNE WOODARD

**Appeal from the Criminal Court for Hamblen County**
**No. 16-CR-600      Alex E. Pearson, Judge**
_____

### No. E2017-02308-CCA-R9-CD
_____

In this interlocutory appeal, the Defendant, Timothy Wayne Woodard, challenges the district attorney general's denial of his application for pretrial diversion and the trial court's affirmance of that denial with respect to his charges for nine counts of removal of government records and nine counts of theft of property valued less than $500. On appeal, the Defendant argues that the district attorney general abused his discretion in denying pretrial diversion and that the trial court erred in finding no abuse of discretion. Upon reviewing the record and the applicable law, we affirm the denial of pretrial diversion.

**Tenn. R. App. R. 9 Interlocutory Appeal; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, P.J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and ROBERT L. HOLLOWAY, JR., JJ., joined.

Paul G.S. Whetstone, Morristown, Tennessee, for the Appellant, Timothy Wayne Woodard.

Herbert H. Slatery III, Attorney General and Reporter; Katherine C. Redding, Assistant Attorney General; Dan E. Armstrong, District Attorney General; and J. Bradley Mercer, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

### FACTUAL AND PROCEDURAL HISTORY

In September 2016, the Defendant, a recent law school graduate, was charged through a presentment with nine counts of removal of government records and nine

counts of theft of property valued under $500 for taking multiple court case files from the Hamblen County Circuit Court Clerk's Office between January 2014 and July 2016. Shortly after the Defendant was found in possession of the files in July 2016, he was interviewed by police officers and acknowledged taking the files. He stated that his practice was to copy the files to utilize in his studies at law school and then return the files to the clerk's office. He also stated that Ms. Vickie Moore, the former deputy clerk who had been deceased for approximately two years at the time of the investigation, had given him permission to remove the files for copying so that he did not have to pay the clerk's office to make copies. The Defendant continued the practice even when Ms. Moore no longer worked at the office.

The Defendant filed an application for pretrial diversion with the district attorney general. He provided information regarding his social history, which included his impoverished upbringing and abandonment by his mother at an early age. He also included information regarding his mental health issues, his treatment history, and his enrollment in the Tennessee Lawyers Assistance Program ("TLAP"). He provided information regarding his history of community service and volunteerism and his time as a student at the Nashville School of Law, and he attached multiple letters supporting his request for pretrial diversion. The Defendant maintained that he had been cooperative with law enforcement during the investigation and that he had accepted responsibility for his actions.

The district attorney general's office subsequently sent a letter to the Defendant's counsel denying the application for pretrial diversion. The prosecutor considered the Defendant's good social history, his good physical condition, and his lack of a criminal history as favorable factors. The prosecutor noted that, despite the Defendant's challenging upbringing, he had worked his way through college and law school, was active in politics and philanthropy, and had a good reputation in the community. The prosecutor stated that he considered the Defendant's mental health condition but determined that it did not weigh in favor for or against diversion. The prosecutor also stated that while "it could be argued that pretrial diversion is in [the] Defendant's best interest," the prosecutor determined that this factor was also neutral. The prosecutor considered as negative factors: (1) the likelihood that the Defendant would become a repeat offender and/or the need to deter the Defendant; (2) the circumstances of the offenses; (3) the need for general deterrence; (4) the finding that the ends of justice would not be served by pretrial diversion; and (5) the finding that pretrial diversion was not in the public's best interest. The prosecutor found that these negative factors outweighed the positive factors and denied the Defendant's request for pretrial diversion.

In summarizing the circumstances of the offenses, the prosecutor noted that when the offenses were discovered, the Defendant was employed by Ms. Jill Talley, an attorney

in private practice. On July 8, 2016, Ms. Talley found in the basement of her office original court files from Hamblen County in a four-drawer filing cabinet labeled "Tim's files." Ms. Talley had been involved in at least one of the cases, and the file contained sealed records, which had been opened. Ms. Talley and her husband, Mr. Mike Howard, confronted the Defendant about the files. The Defendant stated that he had "paid for" the files and that Ms. Teresa West, the Hamblen County Circuit Court Clerk, knew he had them. Ms. Talley terminated the Defendant's employment and did not allow the Defendant to take the files with him. She then contacted Ms. West, who notified the district attorney general and law enforcement. Ms. West and law enforcement officers met Ms. Talley at her office, and the officers collected the files.

On July 9, 2016, Investigator Teddy Collingsworth with the district attorney general's office and Detective David Stapleton of the Hamblen County Sheriff's Department met with the Defendant, who consented to a search of his residence and stated that no files were in his residence. During the search, the officers located two files belonging to the clerk's office in the Defendant's briefcase. The Defendant's interactions with the officers were audio-recorded. Two days later, the Defendant met with the district attorney general and Investigator Collingsworth, and the meeting also was audio-recorded.

The prosecutor's letter stated that during the two meetings, the Defendant discussed his knowledge of and prior involvement with the clerk's office, including his prior employment with Juvenile Court Services, his prior work study with the clerk's office, and his prior clerkships with two judges. The prosecutor stated that while the Defendant's statements appeared to be an attempt to explain why he believed he could take the files, the prosecutor concluded that the Defendant's actions in light of the relationships that the Defendant developed in the clerk's office demonstrated "an abuse and/or breach of the trust" of those working in the clerk's office. The prosecutor determined that the Defendant knew or should have known that his actions were unlawful based upon his experience with the local judicial system. The prosecutor noted that the Defendant also took juvenile files and that he knew or should have known the sensitive nature and confidentiality surrounding the juvenile files due to his prior experience with Juvenile Court Services. The prosecutor determined that the Defendant's willingness to commit the offenses despite possessing prior knowledge of the judicial system demonstrated that pretrial diversion would not be in the public's best interest or serve the ends of justice. The prosecutor found a need to deter others working in the court system from committing similar acts.

The prosecutor stated that the Defendant admitted to Investigator Collingsworth that he had cut off the file numbers from some of the files and did not intend to return the files. The Defendant maintained that he believed the clerk's office was going to shred the

files. The prosecutor concluded that based upon the Defendant's legal training and prior experience with the clerk's office and the courts, he knew or should have known that he could not legally remove, alter, and/or permanently deprive the clerk's office of its files or that "the [c]lerk's office intended to shred a file simply because it was closed, or in [the] Defendant's words, 'retired.'" The prosecutor concluded that the Defendant's statements showed an attempt to minimize his actions and an unwillingness to accept responsibility for his actions, which indicated that pretrial diversion would not be in the public's best interest or serve the ends of justice. The prosecutor also concluded that the Defendant's statement that he was taking the files to aid in his legal studies was an attempt to minimize or explain away his actions, which further diminished his amenability to correction. The prosecutor found that if the Defendant was not able to discern that the acts were illegal despite his legal experience, he would likely commit additional offenses in the future due to his inability to discern right from wrong.

The prosecutor stated that in following up on a letter of recommendation signed by Ms. Pam Coleman, it was discovered that the letter had been prepared by the Defendant and that he told Ms. Coleman that the letter pertained to his being able to perform community service with the Chamber of Commerce when Ms. Coleman expressed that she did not want to be involved in his criminal matters. Ms. Coleman's belief regarding the purpose of the letter was supported by a notation on her calendar. The prosecutor found that the Defendant's actions were indicative of his lack of amenability to correction and "a continuing attempt to deceive and abuse the trust of those in the community." The prosecutor believed that the Defendant's continuing to practice deceptive acts demonstrated that he was likely to become a repeat offender and that neither the interest of the public nor the Defendant would be served by pretrial diversion.

The prosecutor noted that in May 2015, while in law school, the Defendant was accepted in an internship program with the district attorney general's office for course credit. He was scheduled to begin his internship on May 28 but failed to do so. On June 2, an administrative assistant with the district attorney general's office sent the Defendant an email, asking when he intended to begin his internship. The Defendant responded that his law school advisor had informed him that his request for a limited law license was still pending. On June 9, the Defendant sent an email stating that he was still waiting for his limited license. The prosecutor noted that the copy of the order granting the Defendant a limited law license, which was attached to the Defendant's application for pretrial diversion, reflected that the order was entered on May 11, 2015.

The prosecutor stated that according to a letter from the dean of the law school, the district attorney general's office was to provide a report of the dates and times during which the Defendant worked and an evaluation of his performance at the conclusion of the internship. The district attorney general's office did not have a record of a time report

or evaluation sent to the law school on the Defendant's behalf. Assistant District Attorney General David Gratz recalled the Defendant asking him to sign a timesheet, and General Gratz stated that he could not do so because he did not witness the Defendant perform all of the time listed. General Gratz stated that he may have signed a timesheet reflecting a portion of the time. No one else in the district attorney general's office recalled signing a timesheet or preparing an evaluation for the Defendant. The prosecutor's letter denying diversion stated that the Defendant did not participate in the internship in accordance with the terms of the letter provided by the law school. Nevertheless, the prosecutor learned from the law school that the Defendant received course credit for the internship. The prosecutor issued a subpoena duces tecum for the law school records pertaining to the Defendant's internship, but the law school did not produce any timesheets or an evaluation submitted to the school by or on behalf of the Defendant.

The prosecutor stated that while the district attorney general's office intended to conduct a further investigation, he considered the information in determining whether to grant pretrial diversion. The prosecutor noted that it appeared that the Defendant was untruthful regarding the timing of the granting of his limited license to practice law. The prosecutor believed that the Defendant obtained course credit for his internship without completing all of the necessary requirements. Based upon these acts, the "deceptive recommendation letter," and the circumstances of the offenses, the prosecutor concluded that the Defendant was involved in "a continuous pattern of deception" and was not amenable to correction and that pretrial diversion would not serve the best interest of the public. The prosecutor stated that while it can be argued that pretrial diversion is in the Defendant's best interest, it also can be argued that pretrial diversion is not in the Defendant's best interest due to his pattern of deceptive conduct, as the prosecution may serve to deter him from further criminal activity. As a result, the prosecutor concluded that the factor of whether pretrial diversion would be in the Defendant's best interest weighed neither in favor of nor against pretrial diversion.

The prosecutor summarized the Defendant's mental health history as reflected in his application and recognized that the application reflected that the Defendant was aware of his mental health conditions and had received treatment for them prior to the investigation. The prosecutor noted that the Defendant did not enter into a TLAP program until after the investigation began. The prosecutor stated that the Defendant's awareness of his mental health conditions and his treatment did not prevent him from committing the offenses. The prosecutor expressed concern that the Defendant's mental health condition would negatively impact his amenability for correction, his likelihood of becoming a repeat offender, and the likelihood that pretrial diversion would serve the ends of justice and the public's best interests. Nevertheless, the prosecutor determined that the Defendant's mental health did not weigh in favor of or against pretrial diversion.

The prosecutor stated that the Defendant recently posted a comment on his Facebook page that denigrated a reporter for an article apparently written about the Defendant. The Defendant commented, "Perhaps in his attempt to stoke the fire in this political witch hunt, he could have at least written a more balanced article that relayed the actual truth. If he would spend less time playing puppet, one might take him more serious." The prosecutor stated that the Defendant's comment was indicative of his failure to take responsibility for his actions.

The prosecutor listed the factors weighing against pretrial diversion as including the Defendant's amenability to correction, the likelihood that he would be a repeat offender, the circumstances of the offenses, the need for general deterrence, and the unlikelihood that pretrial diversion would serve the ends of justice or the best interests of the public. The prosecutor found that these negative factors outweighed those factors favoring diversion, which included the Defendant's lack of a criminal record, his good social history, his good physical condition, and that, "arguably, pretrial diversion may be in the best interest" of the Defendant. Thus, the prosecutor denied the Defendant's request for pretrial diversion.

The Defendant filed a motion seeking to recuse the district attorney general's office from prosecuting his case based upon the prosecutor's statements in the letter regarding the Defendant's internship. The trial court denied the motion.

The Defendant also filed a petition for writ of certiorari in the trial court challenging the prosecutor's denial of pretrial diversion. The trial court entered an order granting the motion, requiring the prosecutor to produce all materials considered in denying the Defendant's request for pretrial diversion, and setting the matter for a hearing. The prosecutor subsequently filed the materials that he considered, including a statement from Ms. Talley, a prosecution report, a consent to search form executed by the Defendant, the audio recordings of the Defendant's meetings with law enforcement and the district attorney general, a printout of the Defendant's Facebook post, the Defendant's initial and supplemental applications for pretrial diversion, and documents received from the law school pursuant to a subpoena duces tecum.

During the hearing, the Defendant testified regarding his disagreement with portions of the prosecutor's letter. He denied telling Ms. Talley that he had paid for the files as reflected in the letter. He explained that when Ms. Talley confronted him, she had various files on her desk and specifically referenced a file from a divorce action. He maintained that he had paid the chancery court clerk's office for a copy of the file to utilize in his family law class. He stated that Ms. West knew that he had the files from her office and that he did not receive monetary gain from the files that he had taken.

The Defendant disagreed with the prosecutor's belief that the Defendant's statements regarding his prior employment history with the court system were an attempt to explain why he thought he could take the files. Rather, he testified that his statements regarding his employment history served as an explanation as to how his interaction with the clerk's office began.

The Defendant denied telling Ms. Coleman that the letter of reference only related to his community service with the Chamber of Commerce. He stated that on October 6, 2016, he saw Ms. Coleman at the gym where they were both members while the Defendant was retrieving a letter of reference from the owner of the gym. The Defendant asked Ms. Coleman to write a letter on his behalf and gave her a copy of a standard letter that his counsel had prepared for those acting as references to review. The Defendant stated that Ms. Coleman's letter was dated October 8 and that he obtained her signature on the letter on that day. He also stated that Ms. Coleman's calendar, which the prosecutor relied upon as proof of Ms. Coleman's claim, erroneously reflected that the letter was signed on October 12.

The Defendant testified that his communication with TLAP began before the presentment was issued. He stated that General Gratz signed a timesheet approving all of the hours and not just a portion of the hours that the Defendant had worked during his internship. The Tennessee Supreme Court entered an order granting him a limited license to practice law on May 11, 2015, and the letter from the law school to him enclosing the order was dated May 27. The Defendant stated that as a result, he did not receive notification of the approval of his limited license until sometime after May 27. On cross-examination, the Defendant acknowledged sending emails to the district attorney general's office on June 2 and June 9, 2015, stating that he had not received his limited law license.

The Defendant testified that he began taking the original files from the clerk's office in 2012 when he began law school and that he stopped doing so in 2016 when he graduated. He stated that while he did not have permission from Ms. West to take the files, he "[p]resumed" that Ms. West knew he had the files because Ms. Moore, the former deputy clerk, granted him permission to take the files in 2012. He acknowledged that Ms. Moore had been deceased for approximately two years at the time of the hearing.

Following the hearing, the trial court entered an order denying the Defendant relief. The trial court noted that while it conducted a limited evidentiary hearing to resolve some factual disputes raised by the Defendant, it became clear during the hearing that some of the disputes were "misunderstandings" by the Defendant and not actual factual disputes. The trial court found that the remaining factual disputes raised by the Defendant were "de minimis in nature." With regard to the Defendant's knowledge

regarding the approval of his limited law license, the trial court found that the evidence presented at the hearing supported the prosecutor's letter rather than the Defendant's position in which he denied knowledge of his limited law license being granted and maintained that his previous statements regarding its status were true. The trial court found that the Defendant's dispute regarding the letter written by Ms. Coleman was "of no substantial significance" because it was reasonable that Ms. Coleman did not wish to be involved but felt pressured or obligated to approve the letter. The trial court noted that Ms. Coleman's submission of the letter did not preclude her from further discussing her feelings about the Defendant with the prosecutor. The trial court found that the prosecutor considered and weighed all relevant factors and concluded that the prosecutor did not abuse his discretion in denying pretrial diversion.

The Defendant requested permission from the trial court to seek an interlocutory appeal challenging the denial of pretrial diversion in this court pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure, and the trial court granted the request. The Defendant then filed an application for permission to appeal the denial of pretrial diversion in this court pursuant to Rule 9 ("Rule 9 appeal"), as well as an application for an extraordinary appeal pursuant to Rule 10 ("Rule 10 appeal") challenging the trial court's denial of the motion to recuse the district attorney general's office. In January 2018, this court granted the Defendant's request for a Rule 9 appeal of the denial of pretrial diversion. In April 2018, this court granted the Defendant's request for a Rule 10 appeal, ordered additional briefing on the issue, and stayed the Defendant's Rule 9 appeal pending resolution of the Rule 10 appeal. This court subsequently affirmed the trial court's denial of the Defendant's motion to recuse the district attorney general's office. *See State v. Timothy Wayne Woodard*, No. E2017-02307-CCA-R10-CD, 2019 WL 454276, at *3 (Tenn. Crim. App. Feb. 5, 2019). This court then lifted its stay of the present appeal.

## ANALYSIS

The Defendant challenges the denial of pretrial diversion, arguing that the district attorney general's office should have been recused from prosecuting the case and that the prosecutor failed to consider the Defendant's claim that the former deputy clerk gave him permission to take the original files. The State responds that the prosecutor acted within his discretion in denying the Defendant's request for pretrial diversion. We agree with the State.

A district attorney general may suspend prosecution of a "qualified defendant" for a period of up to two years. *See* T.C.A. § 40-15-105(a)(1)(A) (Supp. 2016). A "qualified defendant" is one who has not previously been granted pretrial diversion or judicial diversion, is not currently charged with a felony or certain enumerated misdemeanor

offenses, and does not have a prior conviction for a felony or a Class A or B misdemeanor. *See* T.C.A. § 40-15-105(a)(1)(B) (Supp. 2016). The Defendant is eligible for pretrial diversion, but he is not presumptively entitled to diversion. *See State v. Stephens*, 497 S.W.3d 408, 419 (Tenn. 2016). Pretrial diversion is "'extraordinary relief' because it allows defendants to avoid prosecution for the offenses they have committed and retain a clean record without ever having to admit guilt." *Id.* (quoting *Stanton v. State*, 395 S.W.3d 676, 685, 688 (Tenn. 2013)).

The determination of whether to grant pretrial diversion to a qualified defendant is within the sole discretion of the district attorney general. *Id.* The district attorney general must "'exercise his or her discretion by focusing on a defendant's amenability for correction and by considering all of the relevant factors, including evidence that is favorable to a defendant.'" *Id.* (quoting *State v. Bell*, 69 S.W.3d 171, 178 (Tenn. 2002)). Our supreme court has identified the following non-exclusive factors in determining whether a qualified defendant should or should not receive pretrial diversion:

> "[the] defendant's amenability to correction, any factors that tend to accurately reflect whether a particular defendant will become a repeat offender, the circumstances of the offense, the defendant's criminal record, social history, physical and mental condition, the need for general deterrence, and the likelihood that pretrial diversion will serve the ends of justice and the best interest[s] of both the public and the defendant."

*Id.* (quoting *State v. Richardson*, 357 S.W.3d 620, 626 (Tenn. 2012)). The circumstances of the offense and the need for deterrence "'cannot be given *controlling* weight unless they are of such overwhelming significance that they [necessarily] outweigh all other factors.'" *State v. McKim*, 215 S.W.3d 781, 787 (Tenn. 2007) (quoting *State v. Washington*, 866 S.W.2d 950, 951 (Tenn. 1993)). This requirement applies only if the district attorney general assigns *controlling* weight to the two factors and does not apply if he or she relies upon multiple factors without assigning controlling weight to either the need for deterrence or the circumstances of the offense. *See State v. Hamilton*, 498 S.W.3d 7, 18-19 (Tenn. 2016).

A district attorney general who denies pretrial diversion must do so in writing and "enumerate all of the relevant factors considered and the weight accorded to each." *Richardson*, 357 S.W.3d at 626 (citing *Bell*, 69 S.W.3d at 177; *State v. Curry*, 988 S.W.2d 153, 157 (Tenn. 1999)). The written denial "'must include both an enumeration of the evidence that was considered and a discussion of the factors considered and weight accorded each'" and must identify any factual disputes between the evidence relied upon by the district attorney general and the defendant's application. *Stephens*, 497 S.W.3d at 420 (quoting *State v. Pinkham*, 955 S.W.2d 956, 960 (Tenn. 1997)).

A defendant may petition the trial court for a writ of certiorari challenging the district attorney general's denial of pretrial diversion. *See* T.C.A. § 40-15-105(b)(3); Tenn. R. Crim. P. 38(a). The trial court must presume on review that the district attorney general's decision is correct and must examine only the evidence considered by the district attorney general to determine whether his or her denial of pretrial diversion constitutes an abuse of discretion. *Stephens*, 497 S.W.3d at 420. "The trial court may not reweigh the evidence." *Id.* Rather, the trial court must review "'the method used by the district attorney general, but not the intrinsic correctness of the decision.'" *Id.* (quoting *State v. Yancey*, 69 S.W.3d 553, 558-59 (Tenn. 2002)).

The trial court only may conduct an evidentiary hearing when necessary to resolve any factual disputes raised by either the district attorney general or the defendant. *Id.* To obtain an evidentiary hearing, the defendant "'should identify any part of the district attorney general's factual basis he or she elects to contest' when petitioning the trial court for review." *Id.* (quoting *Pinkham*, 955 S.W.2d at 960). These disputes generally are limited to "matters that are materially false or based on evidence obtained in violation of the [defendant's] constitutional rights." *Pinkham*, 955 S.W.2d at 960. The trial court should resolve any factual disputes before determining whether the district attorney general's denial of pretrial diversion constitutes an abuse of discretion. *Id.*

The trial court may find that the district attorney general abused his or her discretion "either (1) by failing to consider and articulate all the relevant factors or by considering and relying upon an irrelevant factor, or (2) by making a decision that is not supported by substantial evidence." *Richardson*, 357 S.W.3d at 627 (citing *McKim*, 215 S.W.3d at 788-89). "The district attorney general's failure to consider all relevant factors, including any substantial evidence favorable to the defendant, constitutes an abuse of discretion, even if the reasons stated for denying diversion are supported by the record." *Stephens*, 497 S.W.3d at 420-21. To facilitate appellate review, the trial court must enter a written order confirming that it has satisfied its obligation to "'examine each relevant factor in the pretrial diversion process to determine whether the district attorney general has considered that factor and whether the district attorney general's finding with respect to that factor is supported by substantial evidence.'" *Id.* at 421 (quoting *Yancey*, 69 S.W.3d at 559). The trial court need not use any particular "magic words" or specifically refer to each factor, and the trial court may satisfy its obligation by stating that the district attorney general "examined and considered each relevant factor and discussed the weight attributed to each factor." *Id.*

If the trial court determines that the district attorney general abused his or her discretion by failing to consider all relevant factors or by giving undue consideration to an irrelevant factor, the trial court "must vacate the district attorney general's decision and remand the case to the district attorney general to further consider and weigh all the

relevant factors." *Richardson*, 357 S.W.3d at 627. If the trial court determines that the district attorney general considered all relevant factors but that the denial is not supported by substantial evidence, the trial court "may order the defendant to be placed on pretrial diversion rather than remanding the case to the district attorney general" because, under such circumstances, the trial court has access to a complete record for review and "is not 'filling in the gaps' for the district attorney general." *Id.*

On appeal, the task of this court, like the task of the trial court, is to determine whether the district attorney general abused his or her discretion in denying pretrial diversion. *Stephens*, 497 S.W.3d at 422. This court, like the trial court, "may only consider the evidence presented to the district attorney general, may not reweigh the facts, and may not substitute its judgment for that of the district attorney general." *Id.* Because the discretion to grant or deny pretrial diversion rests with the district attorney general and not this court, this court must not "reassess each factor and determine whether the court agrees with the prosecutor's conclusion" but must instead "look at the evidence cumulatively to determine if the prosecutor provided sufficient evidence and engaged in the proper methodology." *Hamilton*, 498 S.W.3d at 18. If the trial court held an evidentiary hearing on a contested factual issue, this court "'is bound by factual findings made by the trial court unless the evidence preponderates against them.'" *Stephens*, 497 S.W.3d at 422 (quoting *Bell*, 69 S.W.3d at 177).

The Defendant contends that the district attorney general's office should have been recused from the case and that the prosecutor failed to consider his claim that he had permission to obtain the files from the deceased former deputy clerk as a "possible" defense. However, this court has upheld the trial court's denial of the Defendant's motion to recuse the district attorney general's office. *See Timothy Wayne Woodard*, 2019 WL 454276, at *3.

As to the Defendant's claim regarding his "possible" defense, we note that the Defendant did not raise this issue in the trial court. Rather, he filed a petition for writ of certiorari in which he failed to specify the basis upon which he relied in claiming that the prosecutor abused his discretion in denying pretrial diversion. The hearing on the petition focused upon the Defendant's claims of factual disputes, and the Defendant did not specifically argue that the prosecutor failed to consider the "possible" defense in examining the circumstances of the offenses. Upon examining this case in light of our standard of review, we conclude that the prosecutor did not abuse his discretion by denying pretrial diversion. The record establishes that the prosecutor considered all of the available evidence and reviewed and weighed all of the relevant factors before denying pretrial diversion. It is not this court's duty to reevaluate the evidence considered by the prosecutor. Accordingly, the Defendant is not entitled to relief.

**CONCLUSION**

Upon reviewing the record and the applicable law, we affirm the denial of pretrial diversion.

_____

JOHN EVERETT WILLIAMS, PRESIDING JUDGE