FILED

12/18/2017

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
September 20, 2017 Session

## STATE OF TENNESSEE v. MICHAEL NELSON HURT

**Appeal from the Criminal Court for Hamblen County
No. 15-CR-476, 15-CR-477, 15-CR-478, 15-CR-479, 16-CR-073
Alex E. Pearson, Judge**

_____

### No. E2016-02507-CCA-R3-CD

_____

Defendant, Michael Nelson Hurt, pled guilty to official misconduct and theft of property valued over $1000 and accepted an out-of-range sentence of six years' probation. Defendant applied to the trial court for judicial diversion, which the trial court denied. On appeal, Defendant argues that the trial court erred in failing to consider all of the common law factors in determining Defendant's suitability for diversion, resulting in a sentence that is disproportionately punitive. Upon our review of the record, we affirm the judgments of the trial court but remand the case for the entry of judgment forms on each charge that was disposed of by way of the plea agreement.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed and Remanded**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER, J., joined. NORMA MCGEE OGLE, J., concurring in results only.

Troy L. Bowlin II, Morristown, Tennessee, for the appellant, Michael Nelson Hurt.

Herbert H. Slatery III, Attorney General and Reporter; Courtney N. Orr, Assistant Attorney General; Dan E. Armstrong, District Attorney General; and Richie Collins, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

*Factual and Procedural Background*

The Hamblen County Grand Jury issued a presentment charging Defendant with one count of official misconduct in case number 15-CR-476 and one count of theft of property valued over $1000 but less than $10,000 in case number 15-CR-478.[1] Defendant pled guilty as charged in those two cases in exchange for a negotiated out-of-range sentence of six years on each count to be served concurrently and restitution in the amount of $4829.50.[2] The parties agreed that Defendant would serve his sentence on probation and that he could seek judicial diversion at the trial court's discretion.

On November 18, 2016, the trial court held a hearing to accept Defendant's guilty plea and to determine the issue of judicial diversion. In lieu of a formal presentation of the facts, Defendant agreed that the State could submit a written statement of the evidence. While that written statement is not included in the record on appeal, the State provided the following summary of the facts during the trial court's consideration of judicial diversion:

> Judge, as the Court is aware, [Defendant] was an employee of the Morristown Police Department for many years. He was actually a detective sergeant. As part of his duties, judge, he was in charge of the impound lots. Specifically, as it relates to this case, he was in charge of vehicles that had been subjected to civil seizures.
>
> . . . .
>
> And for those vehicles whose owners had negotiated their return with the Department of Safety, he would collect those monies from those individuals and return those vehicles to their respective owners and then deposit that money into the City of Morristown's treasury, into their account.
>
> Had this case gone to trial, the [S]tate would have put on proof that there were three instances involving automobiles. One count involved the

---

[1] It appears that Defendant was also charged in case number 15-CR-477 with theft of property valued under $500; in case number 15-CR-479 with theft of property valued over $1000; and in case number 16-CR-073 with four counts of official misconduct, one count of theft of property valued over $500, and one count of theft of property valued under $500. However, these indictments are not in the record on appeal.

[2] While the parties specifically mentioned during the plea hearing that the charges in case numbers 15-CR-477, 15-CR-479, and 16-CR-073 would be dismissed, there are no judgment forms in the record for these cases. On remand, the trial court should enter judgment forms reflecting the disposition of each count of each indictment that was disposed of by way of this plea agreement. *See State v. Davidson*, 509 S.W.3d 156, 217 (Tenn. 2016) (requiring a trial court to prepare a uniform judgment document for each count of the indictment).

negotiated return was [sic] five thousand. That was paid to [Defendant]. One thousand of that was deposited. Four thousand was not. There was four thousand dollars found in the glove box of his city[-]issued vehicle, four thousand in cash.

The other -- There was another instance that involved the specified amount was five thousand dollars. [Defendant] -- The [S]tate would allege probably -- Well, there's no doubt that he exceeded his authority. He renegotiated that down to thirty-five hundred dollars -- No, I apologize. That was fifteen hundred dollars. He actually renegotiated that to fifteen hundred, which he was paid that, so that was thirty-five hundred dollars less than what the Department of Safety and the vehicle owner had agreed to.

. . . .

That fifteen hundred dollars was not deposited. There was fifteen hundred dollars found in his [city-issued] vehicle that was in addition to the four thousand dollars.

. . . .

There was another incident that if we had gone to trial, the [S]tate would have put on proof that he had collected five hundred dollars for another seizure. That the [S]tate would have -- Or the [S]tate would have put on proof that was paid to him. The [S]tate would have also called the bookkeeper or a representative from the city's treasury department. That person would have testified and shown that none of these amounts were ever deposited.

There were also concerning the last two indictments,[3] judge, there were -- I hate to call it scrap iron but there were two central heat and air units that [Defendant] took from the impound lot and sold them at Morristown Iron and Metals.

. . . .

For two central heat and air units and one burned out automobile, that totaled eight hundred and twenty-nine dollars and fifty cents. And, again, the [S]tate would have called the representative from the city from the treasury department. That money was never deposited into the city's

---

[3] It is not clear from the record which two indictments the State is referring to here.

account. The state would have shown proof that [Defendant] did in fact receive monies, receive two checks from Morristown Iron and Metals in his name.[4]

Neither the State nor Defendant presented any witnesses, though the trial court questioned Defendant under oath. When the trial court asked Defendant what he was planning to do with the money found in his glove box, Defendant explained that he "got in a quandary" when a girl could not pay the $5000 she had negotiated with the Department of Safety to regain possession of her vehicle. The girl's father called Defendant, and Defendant agreed to accept the reduced amount of $1500 out of "sympathy." Defendant admitted that he did not have the authority to renegotiate the amount set by the Department of Safety. Another person had paid $4000 to regain possession of his vehicle in addition to a $1000 storage fee because "the vehicle had been sitting there for well past the order for him to pick it up." While Defendant deposited the $1000 storage fee, he had not deposited either the $4000 or the $1500 because he was trying to figure out a way to reconcile the paperwork for the transactions so that he would not get in trouble for accepting the reduced amount for the girl's vehicle. Defendant admitted that he did not need the money that was found in the glove box. As to the scrap metal, Defendant stated that the items had been at the impound lot for years and that he hauled it off because the lot was running out of space. Defendant admitted that it was not his property and that he did not deposit the money in the city's treasury. Instead, he spent the money on "[n]othing in particular."

Defendant submitted an Application for Certification of Eligibility for Diversion and several letters from members of the community attesting to his character, both of which were entered into evidence. The trial court also entered into evidence what it referred to as a presentence report, though the document contained in the record is only a single-page "Criminal History Report." The trial court found that Defendant had never been previously granted diversion and did not have a prior disqualifying conviction. In fact, the only charges reflected on the Criminal History Report were those currently pending before the trial court.

Through defense counsel, Defendant argued that he had served the community well for fifteen years but that he had made a "bad choice" for which he had accepted responsibility, agreeing to go "above and beyond" the maximum sentence. Defendant noted that the restitution amount would be paid that day out of the money he had posted for his bond in addition to the $5500 that had been recovered from the glove box of his

---

[4] The State made an oral motion at the beginning of the hearing, with which Defendant agreed, to amend the offense date of case number 15-CR-478, theft of property valued over $1000, to encompass the period between April 9, 2014, and January 15, 2015. It is not clear from the record whether this amendment was intended to include all the acts of theft described in the statement of facts under a single indictment or whether some of these acts were the bases of the indictments that were dismissed.

city-issued vehicle.  Defendant had resigned from the Morristown Police Department and no longer had "any hopes of a career in law enforcement."  Defendant had obtained a limited real estate license, which could be revoked upon a felony conviction.

After taking a short recess to consider the case, the trial court ruled from the bench that it would accept the agreed-upon, out-of-range sentence of six years' probation, stating that "if it wasn't for the fact that you're pleading outside the range, I'd just reject your plea agreement altogether" because "you can't be trusted with a position of public trust such as the police department . . . and just get probation."  However, the trial court denied the request for judicial diversion, stating that "under the *Parker* factors, and this is more for the record because I have to build a record, I'm supposed to consider certain factors to determine whether or not you're eligible for a judicial diversion."  The trial court considered the fact that Defendant's criminal conduct directly involved his duties as a law enforcement officer.  The trial court did not believe that granting diversion in such a case would be an effective deterrent for Defendant or others.  The trial court found that Defendant had a "positive social history" but weighed that against the fact that Defendant "mess[ed] up" his career and violated his obligations as a public servant.  The trial court found the fact that Defendant did not need the money to pay for some kind of debt—that "[i]t was just quick cash"—weighed against diversion.  The trial court found that Defendant's lack of any prior criminal history weighed in his favor.  The trial court was "troubl[ed]" by the fact that Defendant held onto the money while he tried to cover up the fact that he renegotiated a lesser amount rather than simply turn in the money and admit to his error in judgment.  The trial court concluded that based on Defendant's positive social history, lengthy career in law enforcement, and his agreement to plead outside the range, "six years of probation will serve as a sufficient deterrent to you and others not to commit this crime again" but that judicial diversion was not "appropriate under the *Parker* factors."

Defendant now appeals the denial of judicial diversion, arguing that the trial court erred in only considering "certain factors" under *State v. Parker*, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996), that there was no substantial evidence in the record to support the trial court's decision, and that the denial of judicial diversion was "disproportionately punitive."

*Analysis*

When a defendant challenges the length, range, or manner of service of a sentence, this Court reviews the trial court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness.  *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012); *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012).  This presumption applies to "within-range sentencing decisions that reflect a proper application of the purposes and principles of the Sentencing Act."  *Bise*, 380 S.W.3d at 707.  This same standard of

review applies to the trial court's decision to grant or deny judicial diversion. *State v. King*, 432 S.W.3d 316, 325 (Tenn. 2014).

Judicial diversion is a form of probation that affords certain qualified defendants the opportunity to avoid a permanent criminal record. *See* T.C.A. § 40-35-313(a)(1)(A). If a defendant qualifies for judicial diversion, a trial court may defer proceedings without entering a judgment of guilt, placing the defendant on probation without categorizing the defendant as a convicted felon. *Id.* Upon successful completion of the probationary period, the trial court will dismiss the charges and the defendant may seek expungement of the record, which "restore[s] the person, in the contemplation of the law, to the status the person occupied before such arrest or indictment or information." *King*, 432 S.W.3d at 323 (quoting *State v. Schindler*, 986 S.W.2d 209, 211 (Tenn. 1999)); *see* T.C.A. § 40-35-313(a)(2), (b). However, if the defendant violates the terms of his or her probation, "the court may enter an adjudication of guilt and proceed as otherwise provided." T.C.A. § 40-35-313(a)(2). "Judicial diversion is a form of 'legislative largess' available to qualified defendants who have entered a guilty or nolo contendere plea or have been found guilty of an offense without the entry of a judgment of guilt." *King*, 432 S.W.3d at 323.

A defendant is eligible for judicial diversion if he or she is found guilty or pleads guilty or nolo contendere to a Class C, D, or E felony; has not been previously convicted of a felony or Class A misdemeanor; has not been previously granted judicial or pretrial diversion; and is not seeking deferral for a sexual offense or for an offense committed by an elected or appointed official "in the person's official capacity or involv[ing] the duties of the person's office." *See* T.C.A. § 40-35-313(a)(1)(B)(i). "Eligibility under the statute does not, however, constitute entitlement to judicial diversion; instead, the decision of whether to grant or deny judicial diversion is entrusted to the discretion of the trial court." *King*, 432 S.W.3d at 323; *see also State v. Dycus*, 456 S.W.3d 918, 929 (Tenn. 2015) ("There is no presumption that a defendant is a favorable candidate for judicial diversion.").

In determining whether a defendant is a favorable candidate for diversion, the trial court must consider several common law factors:

"(a) The accused's amenability to correction, (b) the circumstances of the offense, (c) the accused's criminal record, (d) the accused's social history, (e) the accused's physical and mental health, and (f) the deterrence value to the accused as well as others. The trial court should also consider whether judicial diversion will serve the ends of justice—the interests of the public as well as the accused."

*King*, 432 S.W.3d at 326 (quoting *Parker*, 932 S.W.2d at 958). "[T]he trial court must weigh the factors against each other and place an explanation of its ruling on the record." *Id*. at 323 (citing *State v. Electroplating, Inc.*, 990 S.W.2d 211, 229 (Tenn. Crim. App. 1999)). Our supreme court has explained:

> [W]hen the trial court considers the *Parker* and *Electroplating* factors, specifically identifies the relevant factors, and places on the record its reasons for granting or denying judicial diversion, the appellate court must apply a presumption of reasonableness and uphold the grant or denial so long as there is any substantial evidence to support the trial court's decision. Although the trial court is not required to recite all of the *Parker* and *Electroplating* factors when justifying its decision on the record in order to obtain the presumption of reasonableness, the record should reflect that the trial court considered the *Parker* and *Electroplating* factors in rendering its decision and that it identified the specific factors applicable to the case before it. Thereafter, the trial court may proceed to solely address the relevant factors.

*Id*. at 327. A trial court is not required to use specific "magic words" in its consideration of the relevant factors. *Id*. at 327 n.8. However, failure to consider the common law factors results in a loss of the presumption of reasonableness, and this Court will either conduct a de novo review or remand the case to the trial court for reconsideration. *Id*. at 327-28.

Defendant argues that the trial court failed to make specific findings with regard to each of the *Parker* factors. Defendant quotes the following language from *State v. Hamilton*:

> [W]here, as here, a trial court specifically limits its discussion to certain factors and omits any analysis of the remaining factors, including the defendant's criminal record, social history, and present condition; the deterrent effect on other criminal activity; and whether pretrial diversion would serve the ends of justice and the best interests of both the public and the defendant, the trial court has not satisfied its review obligations.

498 S.W.3d 7, 17 (Tenn. 2016). However, *Hamilton* specifically addressed a trial court's review of a prosecutor's decision to deny pretrial diversion under a writ of certiorari, not a trial court's consideration of judicial diversion. *Id*. at 16-17. While many of the similarities between pretrial and judicial diversion have allowed courts to "draw[] heavily from the case law governing pretrial diversion to analyze cases involving judicial diversion," *State v. Cutshaw*, 967 S.W.2d 332, 343 (Tenn. Crim. App. 1997), the Tennessee Supreme Court has not applied the deferential *Bise* standard of review to

pretrial diversion, *see generally State v. Stephens*, 497 S.W.3d 408 (Tenn. 2016). As clearly stated in *King*, "the trial court is not required to recite all of the *Parker* and *Electroplating* factors when justifying its decision on the record in order to obtain the presumption of reasonableness" so long as the record reflects that the trial court considered the factors and identified those relevant to the case before it. 432 S.W.3d at 327; *see also Dycus*, 456 S.W.3d at 930.

The record in this case reflects that the trial court considered the appropriate *Parker* factors. The trial court discussed at length the circumstances of the offense, especially the fact that the offense directly involved Defendant's duties as a law enforcement officer,[5] that Defendant violated the public trust placed in him to handle money owed to the city, and that Defendant did not have a specific need for the money, such as a debt or a sick child, that might mitigate the offense. The trial court found that these circumstances weighed against granting judicial diversion. The trial court also considered deterrence to both Defendant and the public, finding that granting diversion in this situation would not "send the right message." The trial court considered Defendant's lack of any criminal record and his positive social history, finding that both of these factors weighed in his favor. While the trial court did not specifically mention the words "amenability to correction," the trial court did state that it appreciated Defendant's candidness with regard to the scrap metal and that it was accepting the plea agreement because Defendant had agreed to a sentence outside of his range. These statements indicate that the trial court did consider Defendant's amenability to correction and found that Defendant's acceptance of responsibility weighed at least somewhat in his favor. The trial court did not address Defendant's physical and mental health; however, Defendant presented no evidence to indicate that this factor would have been relevant to the trial court's decision one way or the other.

Because the trial court considered the *Parker* factors, identified those that were relevant to this case, and placed its reasoning on the record, its decision to deny judicial diversion is entitled to a presumption of reasonableness. Based on the limited record before this Court, there is substantial evidence to support the trial court's findings. The trial court did not abuse its discretion in denying judicial diversion. *See State v. Jason Erik Redden*, No. E2016-00998-CCA-R3-CD, 2017 WL 1019511, at *12 (Tenn. Crim. App. Mar. 15, 2017) (finding no abuse of discretion when trial court denied diversion to police chief charged with official misconduct for mishandling vehicles and money), *no perm. app. filed*.

---

[5] There is no evidence in the record that Defendant's position with the Morristown Police Department was an elected or appointed position such that he would be ineligible for diversion under Tennessee Code Annotated section 40-35-313(a)(1)(B)(i)(*b*).

Finally, Defendant argues that the trial court's denial of judicial diversion is "disproportionately punitive" in that a felony conviction will result in Defendant losing his rights to vote and to possess a firearm and may result in the loss of his limited real estate license. However, Defendant has cited no authority for the proposition that a denial of judicial diversion may be overturned on the ground that the resulting conviction is "disproportionately punitive," thereby waiving that argument. *See* Tenn. R. Ct. Crim. App. 10(b). Regardless, Defendant agreed to the six-year probationary sentence in the event the trial court denied diversion; he cannot now complain about the outcome of his plea simply because his gamble on the trial court's discretion did not pay off. Likewise, Defendant's complaint that the trial court "did not even conduct an evidentiary hearing on any issues it discussed" is a nonstarter given the fact that Defendant did not request a separate sentencing hearing nor made any attempt to introduce additional witnesses or testimony that would have been relevant to the issue of judicial diversion. *See* Tenn. R. App. P. 36(a) (stating that this Court will not grant relief "to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error"). Moreover, Defendant has again failed to cite any authority that the "hearing on the petition in open court in which the parties presented arguments" about which he now complains was legally inadequate for the trial court to consider Defendant's suitability for judicial diversion. *See* Tenn. R. Ct. Crim. App. 10(b). Defendant is not entitled to relief.

*Conclusion*

Based on the foregoing, we affirm the judgments of the trial court. However, we remand the case for the entry of judgment forms on each charge that was disposed of by way of this plea agreement.

_____
TIMOTHY L. EASTER, JUDGE